IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA
and the STATE OF WISCONSIN,

            Plaintiffs,

     v.

NCR CORPORATION and
SONOCO-U.S. MILLS, INC.
(formerly known as U.S. Paper Mills
Corp.),

            Defendants.

CIVIL ACTION NO.

**CONSENT DECREE
FOR PERFORMANCE OF PHASE 1 OF THE REMEDIAL ACTION
IN OPERABLE UNITS 2-5 OF THE LOWER FOX RIVER AND GREEN BAY SITE**

# TABLE OF CONTENTS

I.       BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.      JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.     PARTIES BOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.      DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V.       GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

VI.      PERFORMANCE OF PHASE 1 REMEDIAL DESIGN ACTIVITIES AND
         THE PHASE 1 WORK BY SETTLING DEFENDANTS . . . . . . . . . . . . . . . . . . . . 12

VII.     QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS . . . . . . . . . . 17

VIII.    ACCESS TO PROPERTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IX.      REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

X.       RESPONSE AGENCIES' APPROVAL OF PLANS AND
         OTHER SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

XI.      PROJECT COORDINATORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

XII.     PERFORMANCE GUARANTEE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

XIII.    EMERGENCY RESPONSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

XIV.     PAYMENTS FOR RESPONSE COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

XV.      INDEMNIFICATION AND INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

XVI.     FORCE MAJEURE EVENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

XVII.    DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

XVIII.   STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

XIX.     COVENANTS NOT TO SUE BY PLAINTIFFS . . . . . . . . . . . . . . . . . . . . . . . . . 53

XX.      COVENANTS BY SETTLING DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . 56

XXI.     EFFECT OF SETTLEMENT AND CONTRIBUTION PROTECTION . . . . . . . . 58

XXII.    ACCESS TO INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

XXIII.   RETENTION OF RECORDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

XXIV.    NOTICES AND SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

XXV.     EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

XXVI.    RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

XXVII.   APPENDICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

XXVIII.  COMMUNITY RELATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

XXIX.    MODIFICATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67

XXX.     LODGING AND OPPORTUNITY FOR PUBLIC COMMENT . . . . . . . . . . . . . 67

XXXI.    SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

XXXII.   FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

**CONSENT DECREE**
**FOR PERFORMANCE OF PHASE 1 OF THE REMEDIAL ACTION**
**IN OPERABLE UNITS 2-5 OF THE LOWER FOX RIVER AND GREEN BAY SITE**

I. BACKGROUND

A.     The United States of America ("United States"), on behalf of the Administrator of

the United States Environmental Protection Agency ("EPA"), and the State of Wisconsin

(the "State"), on behalf of the Wisconsin Department of Natural Resources ("WDNR"), filed a

Complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental

Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606 and 9607.

B.     The Plaintiffs' Complaint seeks, inter alia:  (i) reimbursement of certain costs

incurred by the United States and the State for response actions at Operable Unit 4 of the Lower

Fox River and Green Bay Site (the "Site," as defined below) in northeastern Wisconsin, together

with accrued interest; and (ii) performance of certain response work by the defendants at

Operable Unit 4 of the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300

(as amended) (the "NCP").

C.     Sediments in the Lower Fox River and in Green Bay are contaminated with

polychlorinated biphenyls ("PCBs") that were discharged in connection with the production and

reprocessing of PCB-containing carbonless copy paper at multiple facilities in the Fox River

Valley.  The Site has been divided into five geographically-distinct operable units.

D.     EPA and WDNR (collectively referred to herein as the "Response Agencies")

jointly issued a Record of Decision selecting a remedy for Operable Units 1 and 2 at the Site in

December 2002.  The Response Agencies jointly issued a second Record of Decision selecting a

remedy for Operable Units 3, 4, and 5 at the Site in June 2003.  Those Records of Decision call

Case 2:06-cv-00484-LA     Filed 04/12/06     Page 3 of 77     Document 2

for dredging, dewatering, and upland landfill disposal of PCB-containing sediments currently located in certain areas at the Site.

E.    The remedial action for Operable Unit 1 is being performed under a separate Consent Decree in the case captioned <u>United States and the State of Wisconsin v. P.H. Glatfelter Co. and WTM I Co.</u>, Case No. 03-C-0949 (E.D. Wis.).

F.    The remedial design for Operable Units 2-5 is being prepared under an administrative settlement agreement between the Response Agencies and NCR Corporation and Fort James Operating Company, captioned <u>In re Lower Fox River and Green Bay Site</u>, U.S. EPA Region 5, CERCLA Docket No. V-W-'04-C-781 (hereinafter the "Remedial Design Agreement," as defined below).

G.    In implementing the Remedial Design Agreement, the parties performed additional pre-design sampling in particular areas of the Site. The results of that sampling indicate elevated concentrations of PCBs in sediments in certain areas of Operable Unit 4, along the west bank of the Lower Fox River, just downstream from the De Pere Dam (the "Phase 1 Project Area," as defined below).

H.    The Response Agencies have determined that the remedial action for Operable Units 2-5 should be conducted in two phases to expedite the response in the Phase 1 Project Area. Phase 1 of the remedial action will address PCB-contaminated sediments in the Phase 1 Project Area. All remaining elements of the remedial action would be implemented in Phase 2.

I.    The remedial designs for Phases 1 and 2 of the remedy will both be prepared under the existing Remedial Design Agreement. This Consent Decree provides for performance of Phase 1 of the remedial action by NCR Corporation and Sonoco-U.S. Mills, Inc. (the "Settling

Defendants"), in accordance with a Phase 1 remedial design that will be subject to review and approval by the Response Agencies.

J.    The Settling Defendants do not admit any liability to the Plaintiffs arising out of the transactions or occurrences alleged in the Complaint, nor do they acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment. Nothing in this Consent Decree is intended by the Parties to be, nor shall it be construed as, an admission of fact or law, an estoppel, or a waiver of defenses by Settling Defendants for any other purpose; provided, however, that nothing in this sentence shall be construed as limiting the Covenants By Settling Defendants in Section XX of this Consent Decree.  The Parties agree that the provisions of this Consent Decree are not based on any views or assumptions regarding Settling Defendants' appropriate share of liability or costs relating to the Site.  Participation in this Consent Decree by Settling Defendants is not intended by the Parties to be, and shall not be, an admission of any fact or opinion developed by the United States, the State, or any other person or entity.

K.    Based on the information presently available to EPA and WDNR, EPA and WDNR believe that the Phase 1 Work (as defined below) will be properly and promptly conducted by the Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

L.    Solely for the purposes of Section 113(j) of CERCLA, Phase 1 of the remedial action and the Phase 1 Work to be performed by the Settling Defendants shall constitute a response action taken or ordered by the President.

M.      The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties as a good faith settlement of Plaintiffs' claims, that implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.  JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b).  This Court also has personal jurisdiction over the Settling Defendants.  Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District.  Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.  PARTIES BOUND

2.      This Consent Decree applies to and is binding upon the United States and the State and upon Settling Defendants and their successors and assigns.  Any change in ownership or corporate status of a Settling Defendant, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.      Settling Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Phase 1 Work required by this Consent Decree and to each person representing any Settling Defendant with respect to the Phase 1 Work and shall condition

all contracts entered into hereunder upon performance of the Phase 1 Work in conformity with the terms of this Consent Decree. Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Phase 1 Work required by this Consent Decree. Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Phase 1 Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

4.      Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq*.

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXVII). In the event of conflict between this Decree and any appendix, this Decree shall control.

"Date of Entry" shall mean the date on which this Consent Decree is entered by the Court, after receipt and consideration of any public comments.

"Date of Lodging" shall mean the date on which this Consent Decree is lodged with the Court, before publication of a notice soliciting public comments.

"Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"DOJ" shall mean the United States Department of Justice and any successor departments or agencies of the United States.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Force Majeure Event," for purposes of this Consent Decree, shall mean any event arising from causes beyond the control of the Settling Defendants, of any entity controlled by Settling Defendants, or of Settling Defendants' contractors or subcontractors, that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendants' best efforts to fulfill the obligation. The requirement that the Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure Event and best efforts to address the effects of any potential Force Majeure Event (i) as it is occurring and (ii) following the potential Force Majeure Event, such that the delay is minimized to the greatest extent possible. Financial inability to complete the Phase 1 Work does not constitute a "Force Majeure Event."

"Interest," shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest

shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper case letter.

"Parties" shall mean the United States, the State of Wisconsin, and the Settling Defendants.

"Phase 1 Project Area" shall mean that area of Operable Unit 4 of the Site delineated on Figure 1 attached to the SOW. For the purpose of this Consent Decree, the term "Phase 1 Project Area" shall also encompass the area delineated on any revision to Figure 1 to adjust the horizontal and/or vertical limits of the Phase 1 Project Area in accordance with Consent Decree Subparagraph 12.c and Sections I.C, II.A.1, and II.B.1 of the SOW.

"Phase 1 Remedial Design Activities" shall mean those activities to be undertaken by Settling Defendant NCR Corporation to conduct pre-design investigations and to develop the final plans and specifications for the Phase 1 Remedial Action pursuant to the Remedial Design Agreement and Sections II.A and IV of the SOW.

"Phase 1 Remedial Action" shall mean all activities to be undertaken to prepare and implement the Phase 1 Remedial Action Plan to be developed under the SOW, including: (i) performance of the Remedial Action Pre-Implementation Activities specified by Section II.B of the SOW; (ii) removal of sediment in the Phase 1 Project Area, as provided by the SOW; (iii) dewatering of the sediment that is removed; (iv) treatment of the water collected during the

dewatering process; (v) upland landfill disposal of the removed sediment after dewatering; (vi) sediment removal verification; and (vii) demobilization and site restoration.

"Phase 1 Work" shall mean the Phase 1 Remedial Action and all other activities that the Settling Defendants are required to perform under this Consent Decree, except for the Phase 1 Remedial Design Activities and those activities required by Section XXIII (Retention of Records).

"Plaintiffs" shall mean the United States and the State of Wisconsin.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq.* (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the Record of Decision for Operable Units 3, 4, and 5 of the Site that was jointly issued by EPA and WDNR in June 2003. For the purpose of this Consent Decree, the terms "Record of Decision" and "ROD" shall also encompass any changes to the June 2003 ROD, including changes made by any future Explanation of Significant Differences or Record of Decision Amendment under 40 C.F.R. § 300.435(c)(2).

"Remedial Design Agreement" shall mean the administrative settlement agreement between the Response Agencies and NCR Corporation and Fort James Operating Company, captioned In re Lower Fox River and Green Bay Site, U.S. EPA Region 5, CERCLA Docket No. V-W-'04-C-781. A copy of the Remedial Design Agreement is attached as Appendix B to this Consent Decree.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean NCR Corporation and Sonoco-U.S. Mills, Inc. (formerly known as U.S. Paper Mills Corp.).

"Site" shall mean the Lower Fox River and Green Bay Site in Northeastern Wisconsin.

"Specified Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States and the State incur after the Date of Lodging in connection with the Phase 1 Remedial Action, including in: (i) reviewing or developing Phase 1 Remedial Action plans, reports and submittals; (ii) overseeing or verifying the Phase 1 Remedial Action; or (iii) implementing, overseeing, or enforcing this Consent Decree. The "Specified Future Response Costs" shall include, but shall not be limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Section VIII (including, but not limited to, the cost of attorney time and any monies paid to secure access, including, but not limited to, the amount of just compensation), Section XIII, and Paragraph 77 of Section XIX.

"State" shall mean the State of Wisconsin.

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Phase 1 Remedial Design Activities and the Phase 1 Work, as set forth in Appendix A to this Consent Decree and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by the Settling Defendants to supervise and direct the implementation of the Phase 1 Work under this Consent Decree.

"United States" shall mean the United States of America.

"Waste Material" shall mean: (i) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (ii) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); (iii) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (iv) any "hazardous substance" under Wis. Stat. § 292.01.

"WDOJ" shall mean the Wisconsin Department of Justice and any successor departments or agencies of the State.

Case 2:06-cv-00484-LA    Filed 04/12/06    Page 11 of 77    Document 2

"WNDR" shall mean the Wisconsin Department of Natural Resources and any successor departments or agencies of the State of Wisconsin.

## V.  GENERAL PROVISIONS

5.      Objectives of the Parties.

a.      The objectives of the Parties in entering into this Consent Decree are to protect public health and welfare and the environment by the design and implementation of certain response activities at the Site – referenced herein as the Phase 1 Work – by the Settling Defendants, to reimburse all Specified Future Response Costs, and to resolve claims of Plaintiffs against Settling Defendants as provided in this Consent Decree.

b.      The Phase I Remedial Design Activities include all response activities to be performed under the Remedial Design Agreement and Paragraph 9 of this Consent Decree to design the Phase 1 Remedial Action and to prepare for performance of the Phase 1 Work.  The Phase 1 Work to be performed under this Consent Decree encompasses all the response activities to be undertaken to implement the Phase 1 Remedial Action in accordance with the SOW, including performance of certain pre-implementation activities specified by the SOW, removal and dewatering of contaminated sediments in the Phase 1 Project Area, and upland landfill disposal of the dewatered sediments.  The Phase 1 Work does not encompass certain other response activities in the Phase 1 Project Area that will be required as part of Phase 2 of the remedial action for Operable Units 2-5, such as long-term operation and maintenance, institutional controls, long-term monitoring, and periodic reviews of the remedial action required by CERCLA Section 121(c) and any applicable regulations.

6. <u>Commitments by Settling Defendants</u>.

a. Settling Defendants shall finance and perform the Phase 1 Remedial Design Activities and the Phase 1 Work in accordance with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth herein or developed by Settling Defendants and approved by the Response Agencies pursuant to this Consent Decree. Settling Defendants shall also reimburse EPA and the State for Specified Future Response Costs, as provided by this Consent Decree.

b. Settling Defendant NCR Corporation shall perform the Phase 1 Remedial Design Activities in accordance with Paragraph 9 of this Consent Decree.

c. The obligations of Settling Defendants to finance and perform the Phase 1 Work and to pay amounts owed the United States and the State under this Consent Decree are joint and several. In the event of the insolvency or other failure of any one Settling Defendant to implement the requirements of this Consent Decree, the remaining Settling Defendant shall complete all such requirements.

7. <u>Compliance With Applicable Law</u>. All activities undertaken by Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations. Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all Federal and state environmental laws as set forth in the ROD and the SOW. The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

8. <u>Permits</u>.

a. As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Phase 1 Work conducted entirely on-site

(i.e., within the areal extent of contamination at the Site or in very close proximity to the contamination at the Site and necessary for implementation of the Phase 1 Work). Where any portion of the Phase 1 Work that is not on-site requires a federal or state permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.       The Settling Defendants may seek relief under the provisions of Section XVI (Force Majeure Events) of this Consent Decree for any delay in the performance of the Phase 1 Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Phase 1 Work.

c.       This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

VI.  <u>PERFORMANCE OF THE PHASE 1 REMEDIAL DESIGN ACTIVITIES AND THE PHASE 1 WORK BY SETTLING DEFENDANTS</u>

9.       <u>Phase 1 Remedial Design Activities</u>.

a.       The Phase 1 Remedial Design Activities (including pre-design investigations) shall be performed in accordance with the Remedial Design Agreement and Sections II.A and IV of the SOW that is attached as Appendix A to this Consent Decree. The Phase 1 Remedial Design Activities shall be deemed "Additional Work" to be performed under Paragraphs 25-27 of the Remedial Design Agreement. A copy of the Remedial Design Agreement is attached as Appendix B to the Consent Decree, the Remedial Design Agreement is incorporated herein by reference, and all requirements under the Remedial Design Agreement relating to Phase 1 Remedial Design Activities are hereby made enforceable requirements of this Consent Decree, but only as to Settling Defendant NCR Corporation.

b.     The following plans and reports shall be submitted to the Response Agencies pursuant to the Remedial Design Agreement, the SOW, and this Paragraph 9:  (i) a Pre-Design Plan; (ii) a Quality Assurance Project Plan; and (iii) a Sampling and Analysis Plan. Upon approval by the Response Agencies, all submittals required by the Remedial Design Agreement, the SOW, and this Paragraph 9 shall be incorporated into and become enforceable under this Consent Decree.

10.     Selection of Supervising Contractor.

a.     All Phase 1 Remedial Design Activities to be performed pursuant to Paragraph 9 of this Consent Decree shall be under the direction and supervision of the project coordinator and the contractors designated under the Remedial Design Agreement.  All other work to be performed by Settling Defendants pursuant to Sections VI (Performance of the Phase 1 Remedial Design Activities and Phase 1 Work by Settling Defendants), VII (Quality Assurance, Sampling and Data Analysis), and XIII (Emergency Response) of this Consent Decree shall be under the direction and supervision of a Supervising Contractor that shall report to and be accountable to the Settling Defendants' Project Coordinator designated under this Consent Decree.  The Supervising Contractor shall be subject to disapproval by the Response Agencies.

b.     Within 45 days after the Date of Lodging, Settling Defendants shall notify the Response Agencies in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor.  The Response Agencies will issue a notice of disapproval or an authorization to proceed.  If at any time thereafter, Settling Defendants propose to change a Supervising Contractor, Settling Defendants shall give such notice to the Response Agencies and must obtain an authorization to proceed from the Response Agencies before the

new Supervising Contractor performs, directs, or supervises any Phase 1 Work under this Consent Decree.

c. If the Response Agencies disapprove a proposed Supervising Contractor, the Response Agencies will notify Settling Defendants in writing. Settling Defendants shall submit to the Response Agencies a list of contractors, including the qualifications of each contractor, that would be acceptable to them within 30 days of receipt of the Response Agencies' disapproval of the contractor previously proposed. The Response Agencies will provide written notice of the names of any contractors that they disapprove and an authorization to proceed with respect to any of the other contractors. Settling Defendants may select any contractor from that list that is not disapproved and shall notify the Response Agencies of the name of the contractor selected within 21 days of the Response Agencies' authorization to proceed.

d. If the Response Agencies fail to provide written notice of their authorization to proceed or disapproval as provided in this Paragraph and this failure prevents the Settling Defendants from meeting one or more deadlines in a plan approved by the Response Agencies pursuant to this Consent Decree, Settling Defendants may seek relief under the provisions of Section XVI (Force Majeure Events).

11. <u>Phase 1 Remedial Action</u>.

a. <u>Submission of Phase 1 Work Plans</u>. The Settling Defendants shall submit the following work plans for the Phase 1 Remedial Action (which are collectively referred to herein as the "Phase 1 Work Plans") in accordance with the requirements and schedule set forth in the SOW: (i) the Phase 1 Remedial Action Plan; and (ii) any other plan(s) developed pursuant to the SOW. Upon approval by the Response Agencies, all Phase 1 Work Plans shall be incorporated into and become enforceable under this Consent Decree.

b.     Performance of the Phase 1 Remedial Action.  The Settling Defendants shall perform the Phase 1 Remedial Action in accordance with the requirements and schedules set forth in the ROD, the SOW, and the Phase 1 Work Plans.

12.     Modification of the SOW or the Phase 1 Work Plans.

a.     Subject to Subparagraph 12.c below, if the Response Agencies determine that modification to the work specified in the SOW and/or in Phase 1 Work Plans is necessary for performance of the Phase 1 Remedial Action, the Response Agencies may require that such modification be incorporated in the SOW and/or such Phase 1 Work Plans; provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the Phase 1 Remedial Action.

b.     For the purpose of this Paragraph 12 only, the "scope of the Phase 1 Remedial Action" is:  (i) removal of sediment in the Phase 1 Project Area as provided by the SOW; (ii) dewatering of the sediment that is removed; (iii) treatment of the water collected during the dewatering process; (iv) upland landfill disposal of the removed sediment after dewatering; (v) sediment removal verification; and (vi) demobilization and site restoration.  The "scope of the Phase 1 Remedial Action" may also include partial capping or supplemental capping in the Phase 1 Project Area after removal of the targeted sediments.  As set forth in Sections I.C, II.A.1, and II.B.1 of the SOW, the Parties may agree to adjust the horizontal and/or vertical limits of the Phase 1 Project Area based on further analysis of recent sampling data, and any such agreed adjustment shall be memorialized in the Pre-Design Plan and/or the Phase 1 Remedial Action Plan approved by the Response Agencies.  Any agreed adjustment to the horizontal and/or vertical limits of the Phase 1 Project Area shall be deemed "consistent with the scope of the Phase 1 Remedial Action."  If the Response Agencies propose to enlarge the Phase

-15-

1 Project Area in the future, such enlargement shall not be considered "consistent with the scope of the Phase 1 Remedial Action" under this Consent Decree unless the Settling Defendants consent.

        c.        If Settling Defendants object to any modification determined by the Response Agencies to be necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XVII (Dispute Resolution), Paragraph 56 (record review).  The SOW and/or the Phase 1 Work Plans shall be modified in accordance with final resolution of the dispute.

        d.        The Settling Defendants shall implement any work required by any modifications incorporated in the SOW and/or in Phase 1 Work Plans in accordance with this Paragraph.

        e.        Nothing in this Paragraph shall be construed to limit the Response Agencies' authority to require performance of further response actions as otherwise provided in this Consent Decree, or as required for Phase 2 of the remedial action in Operable Units 2-5.

        13.        Settling Defendants shall, prior to any off-Site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the Response Agencies' Project Coordinators of such shipment of Waste Material.  However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

        a.        The Settling Defendants shall include in the written notification the following information, where available:  (i) the name and location of the facility to which the Waste Material is to be shipped; (ii) the type and quantity of the Waste Material to be shipped; (iii) the expected schedule for the shipment of the Waste Material; and (iv) the method of

transportation. The Settling Defendants shall notify the state in which the planned receiving

facility is located of major changes in the shipment plan, such as a decision to ship the Waste

Material to another facility within the same state, or to a facility in another state.

       b.    The identity of the receiving facility and state will be determined by the

Settling Defendants following the selection of the Supervising Contractor. The Settling

Defendants shall provide the information required by Subparagraph 13.a as soon as practicable

after the selection of the Supervising Contract and before the Waste Material is actually shipped.

VII.  <u>QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS</u>

      14.    Settling Defendants shall use quality assurance, quality control, and chain of

custody procedures for all treatability, design, compliance and monitoring samples in accordance

with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003,

March 2001), "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018,

February 1998), and subsequent amendments to such guidelines upon notification by the

Response Agencies to Settling Defendants of such amendment. Amended guidelines shall apply

only to procedures conducted after such notification. Prior to the commencement of any

monitoring project under this Consent Decree, Settling Defendants shall submit to the Response

Agencies for approval a Quality Assurance Project Plan ("QAPP") that is consistent with the

SOW, the NCP and applicable guidance documents. If relevant to the proceeding, the Parties

agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and

approved by the Response Agencies shall be admissible as evidence, without objection, in any

proceeding under this Decree. Settling Defendants shall ensure that the Response Agencies'

personnel and their authorized representatives are allowed access at reasonable times to all

laboratories utilized by Settling Defendants in implementing this Consent Decree. In addition,

Settling Defendants shall ensure that such laboratories shall analyze all samples submitted by the Response Agencies pursuant to the QAPP for quality assurance monitoring. Settling Defendants shall ensure that the laboratories they utilize for the analysis of samples taken pursuant to this Decree perform all analyses according to accepted EPA methods. Accepted EPA methods consist of those methods which are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and any amendments made thereto during the course of the implementation of this Decree; however, upon approval by the Response Agencies, Settling Defendants may use other analytical methods which are as stringent as or more stringent than the CLP-approved methods. Settling Defendants shall ensure that all laboratories they use for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent QA/QC program. Settling Defendants shall only use laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by the Response Agencies. The Response Agencies may consider laboratories accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality System requirements. Settling Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Decree will be conducted in accordance with the procedures set forth in the QAPP approved by the Response Agencies.

15. Upon request, the Settling Defendants shall allow split or duplicate samples to be taken by the Response Agencies or their authorized representatives. Settling Defendants shall notify the Response Agencies not less than 15 days in advance of any sample collection activity unless shorter notice is agreed to by the Response Agencies. In addition, the Response Agencies shall have the right to take any additional samples that the Response Agencies deem necessary. Upon request, the Response Agencies shall allow the Settling Defendants to take split or duplicate samples of any samples they take as part of the Plaintiffs' oversight of the Settling Defendants' implementation of the Phase 1 Work.

16. Settling Defendants shall submit to the Response Agencies copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendants with respect to the Phase 1 Project Area and/or the implementation of this Consent Decree unless the Response Agencies agree otherwise.

17. Notwithstanding any provision of this Consent Decree, the United States and the State hereby retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

VIII. ACCESS TO PROPERTY

18. If any property where access is needed to implement this Consent Decree is owned or controlled by any of the Settling Defendants, such Settling Defendants shall:

a. commencing on the Date of Lodging, provide the Plaintiffs and their representatives, including the Response Agencies and their contractors, with access at all reasonable times to such property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

> (1)  monitoring the Phase 1 Work;
>
> (2)  verifying any data or information submitted to the Plaintiffs;
>
> (3)  conducting investigations relating to contamination at or near the Site;
>
> (4)  obtaining samples;
>
> (5)  assessing the need for, planning, or implementing additional response actions at or near the Site;
>
> (6)  implementing the Phase 1 Work pursuant to the conditions set forth in Paragraph 77 of this Consent Decree;
>
> (7)  inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXII (Access to Information);
>
> (8)  assessing Settling Defendants' compliance with this Consent Decree; and
>
> (9)  determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted;

b.  commencing on the Date of Lodging of this Consent Decree, refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the integrity or protectiveness of the remedial measures to be implemented pursuant to this Consent Decree.

19.  If any property where access is needed to implement this Consent Decree is owned or controlled by persons other than any of the Settling Defendants, Settling Defendants shall use best efforts to secure from such persons:

a.      an agreement to provide access thereto for Settling Defendants, as well as for the Plaintiffs, on behalf of the Response Agencies, as well as their representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 18.a of this Consent Decree; and

b.      an agreement, enforceable by the Settling Defendants and the Plaintiffs, to abide by the obligations and restrictions established by Paragraph 18.b of this Consent Decree, or that are otherwise necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree.

20.      For purposes of Paragraph 19 of this Consent Decree, "best efforts" includes the payment of reasonable sums of money in consideration of access.  If any access agreements required by Paragraphs 19.a or 19.b of this Consent Decree are not obtained within 45 days after the Date of Lodging, then Settling Defendants shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Defendants have taken to attempt to comply with Paragraph 19 of this Consent Decree.  The United States and the State may, as they deem appropriate, assist Settling Defendants in obtaining access.  Settling Defendants shall reimburse the United States and the State, as Specified Future Response Costs, for all costs incurred, direct or indirect, by the United States or the State in obtaining such access, including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

21.      If any property where access is needed to implement this Consent Decree is owned or controlled by the Plaintiffs, the Plaintiffs shall use best efforts to assist the Settling Defendants in securing necessary access.

22.     Notwithstanding any provision of this Consent Decree, the United States and the State retain all of their access authorities and rights, as well as all of their rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## IX.  REPORTING REQUIREMENTS

23.     Monthly Progress Reports.

a.      In addition to any other requirement of this Consent Decree, starting with the first month after the Date of Lodging, Settling Defendants shall submit written Monthly Progress Reports to the Response Agencies that shall:  (i) describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous month; (ii) include a summary of all results of sampling and tests and all other data received or generated by Settling Defendants or their contractors or agents in the previous month; (iii) identify all Phase 1 Work Plans and other deliverables required by this Consent Decree completed and submitted during the previous month; (iv) describe all actions, including, but not limited to, data collection and implementation of work plans, which are scheduled for the next month and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts or Pert charts; (v) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Phase 1 Work, and a description of efforts made to mitigate those delays or anticipated delays; (vi) include any modifications to the Phase 1 Work Plans or other schedules that Settling Defendants have proposed to the Response Agencies or that have been approved by the Response Agencies; and (vii) describe all activities undertaken in support of the Community Relations Plan during the previous month and those to be undertaken

in the next month.  Settling Defendants shall submit these progress reports to the Response

Agencies by the tenth day of every month following the Date of Lodging until the completion of

all Phase 1 Work.  If requested by the Response Agencies, Settling Defendants shall also provide

briefings for the Response Agencies to discuss the progress of the Phase 1 Work.

        b.      The Settling Defendants shall notify the Response Agencies of any change

in the schedule described in the Monthly Progress Report for the performance of any activity,

including, but not limited to, data collection and implementation of work plans, no later than

seven days prior to the performance of the activity.

        24.      <u>Phase 1 Final Report</u>.  Within 150 days after completion of all Phase 1 Work, the

Settling Defendants shall submit for the Response Agencies' review and approval a Phase 1

Final Report summarizing the performance of the Phase 1 Work and the other actions taken to

comply with this Consent Decree.  The Phase 1 Final Report shall also include a good faith

estimate of total costs or a statement of actual costs incurred in complying with the Consent

Decree, a listing of quantities and types of materials removed off-Site or handled on-Site, a

listing of the ultimate destination(s) of those materials, a presentation of the analytical results of

all sampling and analyses performed, and accompanying appendices containing all relevant

documentation generated during the removal action (<u>e.g.</u>, manifests, invoices, bills, contracts,

and permits).

        25.      <u>Release Reporting</u>.

        a.      Upon the occurrence of any event during performance of the Phase 1

Work that Settling Defendants are required to report pursuant to Section 103 of CERCLA or

Section 304 of the Emergency Planning and Community Right-to-Know Act ("EPCRA"),

Settling Defendants shall within 24 hours of the onset of such event orally notify the Response

Agencies' Project Coordinators.  If the EPA Project Coordinator is not available, oral

notification shall be given to the EPA Region 5 Emergency Response Section.  These reporting

requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA

Section 304.

b.      Within 20 days of the onset of such an event, Settling Defendants shall

furnish to the Response Agencies a written report, signed by the Settling Defendants' Project

Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in

response thereto.  Within 30 days of the conclusion of such an event, Settling Defendants shall

submit a report to the Response Agencies setting forth all actions taken in response thereto.

26.      <u>Submission and Certification of Reports</u>.

a.      Settling Defendants (or Settling Defendant NCR Corporation, in the case

of a document that is part of the Phase 1 Remedial Design Activities) shall submit two hard

copies of all plans, reports, and data required by the SOW (including all of the Phase 1 Work

Plans) to each of the Response Agencies in accordance with the schedules set forth in the SOW

and such plans.  At the same time, the Settling Defendants (or Settling Defendant NCR

Corporation, as the case may be) shall submit an additional copy to each of the Response

Agencies in electronic format.

b.      All reports and other documents submitted by Settling Defendants to the

Response Agencies (other than the Monthly Progress Reports referred to above) which purport

to document Settling Defendants' compliance with the terms of this Consent Decree shall be

signed by an authorized representative of the Settling Defendants, such as the Settling

Defendants' Project Coordinator.  The Phase 1 Final Report shall also include the following

certification signed by an authorized representative of the Settling Defendants, such as the

Settling Defendants' Project Coordinator:

> "Under penalty of law, I certify that to the best of my knowledge, after appropriate inquiries of all relevant persons involved in the preparation of this Phase 1 Final Report, the information submitted is true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

## X. RESPONSE AGENCIES' APPROVAL OF PLANS AND OTHER SUBMISSIONS

27. After review of any plan, report or other item which is required to be submitted for approval by the Response Agencies pursuant to this Consent Decree, the Response Agencies shall: (i) approve, in whole or in part, the submission; (ii) approve the submission upon specified conditions; (iii) modify the submission to cure the deficiencies; (iv) disapprove, in whole or in part, the submission, directing that the Settling Defendants modify the submission; or (v) any combination of the above. However, the Response Agencies shall not modify a submission without first providing Settling Defendants at least one notice of deficiency and an opportunity to cure within 30 days, except where to do so would cause serious disruption to the Phase 1 Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

28. In the event of approval, approval upon conditions, or modification by the Response Agencies, pursuant to Paragraph 27(i), (ii), or (iii), Settling Defendants shall proceed to take any action required by the plan, report, or other item, as approved or modified by the Response Agencies subject only to their right to invoke the dispute resolution procedures set forth in Section XVII (Dispute Resolution) with respect to the modifications or conditions made by the Response Agencies. In the event that a submission has a material defect and the Response Agencies modify the submission to cure the deficiencies pursuant to Paragraph 27(i), the

Case 2:06-cv-00484-LA    Filed 04/12/06    Page 27 of 77    Document 2

Response Agencies retain their right to seek stipulated penalties, as provided in Section XVIII (Stipulated Penalties).

29. <u>Resubmission of Plans</u>.

a. Upon receipt of a notice of disapproval pursuant to Paragraph 27(iv), Settling Defendants shall, within 20 days, correct the deficiencies and resubmit the plan, report, or other item for approval, except where the Response Agencies' notice specifies a longer period of time or a shorter period of time that is necessary to avoid serious disruption to the Phase 1 Work. Any stipulated penalties applicable to the submission, as provided in Section XVIII, shall accrue during the 20-day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 30 and 31.

b. Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 27(iv), Settling Defendants shall proceed, at the direction of the Response Agencies, to take any action required by any non-deficient portion of the submission. Implementation of any non-deficient portion of a submission shall not relieve Settling Defendants of any liability for stipulated penalties under Section XVIII (Stipulated Penalties).

30. In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by the Response Agencies, the Response Agencies may again require the Settling Defendants to correct the deficiencies, in accordance with the preceding Paragraphs. The Response Agencies also retain the right to modify or develop the plan, report or other item. Settling Defendants shall implement any such plan, report, or item as modified or developed by the Response Agencies, subject only to their right to invoke the procedures set forth in Section XVII (Dispute Resolution).

31.     If upon resubmission, a plan, report, or item is disapproved or modified by the Response Agencies due to a material defect, Settling Defendants shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Defendants invoke the dispute resolution procedures set forth in Section XVII (Dispute Resolution) and the response Agencies' action is overturned pursuant to that Section.  The provisions of Section XVII (Dispute Resolution) and Section XVIII (Stipulated Penalties) shall govern the implementation of the Phase 1 Work and accrual and payment of any stipulated penalties during dispute resolution.  If the Response Agencies' disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XVIII.

32.     All plans, reports, and other items required to be submitted to the response Agencies under this Consent Decree shall, upon approval or modification by the Response Agencies, be enforceable under this Consent Decree.  In the event the Response Agencies approve or modify a portion of a plan, report, or other item required to be submitted to the Response Agencies under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## XI.  <u>PROJECT COORDINATORS</u>

33.     <u>Settling Defendants' Project Coordinator</u>.  The Settling Defendants shall designate a Project Coordinator who shall be responsible for administration of all of Settling Defendants' response activities under this Consent Decree.  The Settling Defendants' Project Coordinator shall be an employee of NCR Corporation or a consultant retained by NCR Corporation.  The Settling Defendants have designated Roger McCready of NCR as their Project Coordinator.  The Project Coordinator has been given the authority to make decisions on behalf

of Settling Defendants with respect to the Phase 1 Work under this Consent Decree, making decisions in a manner consistent with a separate written agreement between the two Settling Defendants. To the greatest extent possible, the Settling Defendants' Project Coordinator shall be readily available during the Phase 1 Work.

34.     <u>Response Agencies' Project Coordinators</u>.

a.     EPA and WDNR shall each designate a Project Coordinator who shall be responsible for overseeing the implementation of the Phase 1 Work. EPA has designated James Hahnenberg as the EPA Project Coordinator. WDNR has designated Gregory Hill as the WDNR Project Coordinator.

b.     Plaintiffs may designate other representatives, including, but not limited to, EPA and WDNR employees, and federal and State contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager ("RPM") and an On-Scene Coordinator ("OSC") by the National Contingency Plan, 40 C.F.R. Part 300. In addition, the Response Agencies' Project Coordinators shall have authority, consistent with the National Contingency Plan, to halt any Phase 1 Work required by this Consent Decree and to take any necessary response action when s/he determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

35.     <u>Successor Project Coordinators</u>. If a Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least 5 working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made. The Settling Defendants' Project Coordinator shall be subject to disapproval by

the Response Agencies and shall have the technical expertise sufficient to adequately oversee all aspects of the Phase 1 Work. The Settling Defendants' Project Coordinator shall not be an attorney for any of the Settling Defendants in this matter.

36.     The Response Agencies' Project Coordinators and the Settling Defendants' Project Coordinator will meet, at a minimum, on a monthly basis.

## XII.  PERFORMANCE GUARANTEE

37.     In order to ensure the full and final completion of the Phase 1 Work, Settling Defendants shall establish and maintain a Performance Guarantee for the benefit of EPA in the amount of $30 million (hereinafter the "Estimated Cost of the Phase 1 Work") in one or more of the following forms, which must be satisfactory in form and substance to EPA:

a.     A surety bond unconditionally guaranteeing payment and/or performance of the Phase 1 Work that is issued by a surety company among those listed as acceptable sureties on Federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.     One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (i) that has the authority to issue letters of credit and (ii) whose letter-of-credit operations are regulated and examined by a U.S. Federal or State agency;

c.     A trust fund established for the benefit of EPA that is administered by a trustee (i) that has the authority to act as a trustee and (ii) whose trust operations are regulated and examined by a U.S. Federal or State agency;

d.     A policy of insurance that (i) provides EPA with acceptable rights as a beneficiary thereof; and (ii) is issued by an insurance carrier that has the authority to issue insurance policies on an admitted or surplus lines basis;

e.      A demonstration by one or more Settling Defendants that each Settling Defendant making that demonstration meets the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Phase 1 Work, provided that all other requirements of 40 C.F.R. § 264.143(f) are satisfied; or

f.      A written guarantee to fund or perform the Phase 1 Work executed in favor of EPA by one or more of the following:  (i) a direct or indirect parent company of a Settling Defendant, or (ii) a company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with at least one Settling Defendant; provided, however, that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test requirements of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Phase 1 Work that it proposes to guarantee hereunder.

38.     Settling Defendants have selected, and EPA has approved, as an initial Performance Guarantee a demonstration of satisfaction of financial test criteria pursuant to Paragraph 37.e with respect to Settling Defendant NCR Corporation.

39.     If at any time during the effective period of this Consent Decree, the Settling Defendants provide a Performance Guarantee for completion of the Phase 1 Work by means of a demonstration or guarantee pursuant to Subparagraph 37.e or Subparagraph 37.f above, such Settling Defendant shall also comply with the other relevant requirements of 40 C.F.R. § 264.143(f), 40 C.F.R. § 264.151(f), and 40 C.F.R. § 264.151(h)(1) relating to these methods unless otherwise provided in this Consent Decree, including but not limited to (i) the initial submission of required financial reports and statements from the relevant entity's chief financial officer and independent certified public accountant; (ii) the annual re-submission of such reports and statements within ninety days after the close of each such entity's fiscal year; and (iii) the

notification of EPA within ninety days after the close of any fiscal year in which such entity no longer satisfies the financial test requirements set forth at 40 C.F.R. § 264.143(f)(1). For purposes of the Performance Guarantee methods specified in this Section XII, references in 40 C.F.R. Part 264, Subpart H, to "closure," "post-closure," and "plugging and abandonment" shall be deemed to refer to the Phase 1 Work required under this Consent Decree, and the terms "current closure cost estimate" "current post-closure cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to refer to the Estimated Cost of the Phase 1 Work.

40.     In the event that EPA determines at any time that a Performance Guarantee provided by any Settling Defendant pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Phase 1 Work or for any other reason, or in the event that any Settling Defendant becomes aware of information indicating that a Performance Guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Phase 1 Work or for any other reason, Settling Defendants, within thirty days of receipt of notice of EPA's determination or, as the case may be, within thirty days of any Settling Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of Performance Guarantee listed in Paragraph 37.e of this Consent Decree that satisfies all requirements set forth in this Section XII. In seeking approval for a revised or alternative form of Performance Guarantee, Settling Defendants shall follow the procedures set forth in Subparagraph 42.b.(2) of this Consent Decree. Settling Defendants' inability to post a Performance Guarantee for completion of the Phase 1 Work shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of

Settling Defendants to complete the Phase 1 Work in strict accordance with the terms hereof.

41.     The commencement of any Work Takeover pursuant to Paragraph 77 of this Consent Decree shall trigger EPA's right to receive the benefit of any Performance Guarantee(s) provided pursuant to Subparagraphs 37.a, 37.b, 37.c, 37.d, or 37.f, and at such time EPA shall have immediate access to resources guaranteed under any such Performance Guarantee(s), whether in cash or in kind, as needed to continue and complete the Phase 1 Work assumed by EPA under the Work Takeover.  If for any reason EPA is unable to promptly secure the resources guaranteed under any such Performance Guarantee(s), whether in cash or in kind, necessary to continue and complete the Phase 1 Work assumed by EPA under the Work Takeover, or in the event that the Performance Guarantee involves a demonstration of satisfaction of the financial test criteria pursuant to Subparagraph 37.e, Settling Defendants shall immediately upon written demand from EPA deposit into an account specified by EPA, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost of the remaining Phase 1 Work to be performed as of such date, as determined by EPA.

42.     Modification of Amount and/or Form of Performance Guarantee.

        a.      Reduction of Amount of Performance Guarantee.  If Settling Defendants believe that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 37 above, Settling Defendants may, on any anniversary of the Date of Entry of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a reduction in the amount of the Performance Guarantee provided pursuant to this Section so that the amount of the Performance Guarantee is equal to the estimated cost of the remaining Phase 1 Work to be performed.  Settling Defendants shall submit a written proposal

Case 2:06-cv-00484-LA     Filed 04/12/06     Page 34 of 77     Document 2

for such reduction to EPA that shall specify, at a minimum, the cost of the remaining Phase 1 Work to be performed and the basis upon which such cost was calculated. In seeking approval for a revised or alternative form of Performance Guarantee, Settling Defendants shall follow the procedures set forth in Subparagraph 42.b.(2) of this Consent Decree. If EPA decides to accept such a proposal, EPA shall notify the petitioning Settling Defendants of such decision in writing. After receiving EPA's written acceptance, Settling Defendants may reduce the amount of the Performance Guarantee in accordance with and to the extent permitted by such written acceptance. In the event of a dispute, Settling Defendants may reduce the amount of the Performance Guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute. No change to the form or terms of any Performance Guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraph 40 or Subparagraph 42.b of this Consent Decree.

        b.        <u>Change of Form of Performance Guarantee</u>.

        (1)        If, after entry of this Consent Decree, Settling Defendants desire to change the form or terms of any Performance Guarantee(s) provided pursuant to this Section, Settling Defendants may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form of the Performance Guarantee provided hereunder. The submission of such proposed revised or alternative form of Performance Guarantee shall be as provided in Subparagraph 42.b.(2) of this Consent Decree. Any decision made by EPA on a petition submitted under this Subparagraph 42.b.(1) shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to challenge by Settling Defendants pursuant to the dispute resolution provisions of this Consent Decree or in any

other forum.

       (2)     Settling Defendants shall submit a written proposal for a revised or alternative form of Performance Guarantee to EPA which shall specify, at a minimum, the estimated cost of the remaining Phase 1 Work to be performed, the basis upon which such cost was calculated, and the proposed revised form of Performance Guarantee, including all proposed instruments or other documents required in order to make the proposed Performance Guarantee legally binding. The proposed revised or alternative form of Performance Guarantee must satisfy all requirements set forth or incorporated by reference in this Section. Settling Defendants shall submit such proposed revised or alternative form of Performance Guarantee to EPA (with a copy to WDNR) in accordance with Section XXIV (Notices and Submissions). EPA shall notify Settling Defendants in writing of its decision to accept or reject a revised or alternative Performance Guarantee submitted pursuant to this Subparagraph. Within ten days after receiving a written decision approving the proposed revised or alternative Performance Guarantee, Settling Defendants shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such Performance Guarantee(s) shall thereupon be fully effective. Settling Defendants shall submit all executed and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding to EPA (with a copy to WDNR) within thirty days of receiving a written decision approving the proposed revised or alternative Performance Guarantee in accordance with Section XXIV (Notices and Submissions).

-34-

c.      Release of Performance Guarantee.  If Settling Defendants receive written

notice from EPA that the Work has been fully and finally completed in accordance with the

terms of this Consent Decree, Settling Defendants may thereafter release, cancel, or discontinue

the Performance Guarantee(s) provided pursuant to this Section.  Settling Defendant(s) shall not

release, cancel, or discontinue any Performance Guarantee provided pursuant to this Section

except as provided in this Subparagraph.  In the event of a dispute, Settling Defendants may

release, cancel, or discontinue the Performance Guarantee(s) required hereunder only in

accordance with a final administrative or judicial decision resolving such dispute.

## XIII.  EMERGENCY RESPONSE

43.      In the event of any action or occurrence during the performance of the Phase 1

Work which causes or threatens a release of Waste Material at or from the Phase 1 Project Area

that constitutes an emergency situation or may present an immediate threat to public health or

welfare or the environment, Settling Defendants shall, subject to Paragraph 44, immediately take

all appropriate action to prevent, abate, or minimize such release or threat of release, and shall

immediately notify the Response Agencies' Project Coordinators.  If the EPA Project

Coordinator is not available, the Settling Defendants shall notify the EPA Region 5 Emergency

Response Unit.  Settling Defendants shall take such actions in consultation with the EPA's

Project Coordinator or other available authorized EPA officer and in accordance with all

applicable provisions of the Health and Safety Plans and any other applicable plans or

documents developed pursuant to the SOW.  In the event that Settling Defendants fail to take

appropriate response action as required by this Section, and EPA or, as appropriate, the State

takes such action instead, Settling Defendants shall reimburse EPA and the State for all costs of

the response action not inconsistent with the NCP pursuant to Paragraph 45 (Payment of

Specified Future Response Costs).

44.      Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States or the State to:  (i) take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or (ii) direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material at or from the Site, subject to Section XIX (Covenants Not to Sue by Plaintiffs).

XIV.  PAYMENTS FOR RESPONSE COSTS

45.      Payment of Specified Future Response Costs.

a.      Settling Defendants shall pay to EPA all Specified Future Response Costs incurred by the United States, to the extent such costs are not inconsistent with the National Contingency Plan.  On a periodic basis, the United States will send Settling Defendants a bill requiring payment that includes an EPA cost summary, showing direct and indirect costs incurred by EPA and its contractors, and a DOJ cost summary, showing costs incurred by DOJ and its contractors, if any.  Settling Defendants shall make all payments within 30 days of Settling Defendants' receipt of each bill requiring payment, except as otherwise provided in Paragraph 59.  All payments and disbursements received by EPA under this Subparagraph 45.a shall be deposited in the Fox River Site Special Account within the EPA Hazardous Substance Superfund, and shall be retained and used to conduct or finance response actions at or in connection with the Site, or transferred by EPA to the EPA Hazardous Substance Superfund. Settling Defendants shall make all payments required by this Paragraph in accordance with the payment instructions set forth in Subparagraph 46.a.

b.      Settling Defendants shall pay to the State all Specified Future Response Costs incurred by the State, to the extent such costs are not inconsistent with the National Contingency Plan.  On a periodic basis, the State will send Settling Defendants a bill requiring payment that includes a WDNR cost summary, showing direct and indirect costs incurred by WDNR and its contractors, and a WDOJ cost summary, showing costs incurred by WDOJ and its contractors, if any.  Settling Defendants shall make all payments within 30 days of Settling Defendants' receipt of each bill requiring payment, except as otherwise provided in Paragraph 59.  Settling Defendants shall make all payments required by this Paragraph in accordance with the payment instructions set forth in Subparagraph 46.b.

c.      In the event that the payments required by this Paragraph 45 are not made within 30 days of the Settling Defendants' receipt of the bill, Settling Defendants shall pay Interest on the unpaid balance.  The Interest shall begin to accrue on the date of the bill and shall accrue through the date of the Settling Defendants' payment.  Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Settling Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 61.  The Settling Defendants shall make all payments of Interest in the same manner as the principal amount.

d.      The dispute resolution procedures set forth in Section XVII (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding reimbursement of the United States and the State for their Specified Future Response Costs.

46.      Payment Instructions.

a.      Payments to EPA.  All payments to EPA under this Section shall:  (i) be made by a wire transfer or certified or cashier's check or checks made payable to "EPA

Hazardous Substance Superfund, Fox River Site Special Account;" (ii) reference the Lower Fox River and Green Bay Site, EPA Site/Spill ID Number A565, and DOJ Case Number 90-11-2-1045/5; and (iii) indicate that the payment is for Specified Future Response Costs payable pursuant to this Consent Decree. All payments to EPA under Section XVIII (Stipulated Penalties) shall: (i) be made by a wire transfer or certified or cashier's check or checks made payable to "EPA Hazardous Substance Superfund;" (ii) reference the Lower Fox River and Green Bay Site, EPA Site/Spill ID Number A565, and DOJ Case Number 90-11-2-1045/5; and (iii) indicate that the payment is for stipulated penalties payable pursuant to this Consent Decree. All payments under this Subparagraph 46.a shall be made in accordance with wire transfer instructions provided by EPA or shall be sent to:

> U.S. Environmental Protection Agency, Region 5
> Program Accounting and Analysis Branch
> P.O. Box 70753
> Chicago, IL   60673

At the time of payment, Settling Defendants shall ensure that notice that payment has been made is sent to DOJ and EPA in accordance with Section XXIV (Notices and Submissions) and to:

> Financial Management Officer
> U.S. Environmental Protection Agency, Region 5
> Mail Code MF-10J
> 77 W. Jackson Blvd.
> Chicago, IL   60604

       b.    <u>Payments to the State</u>. All payments to the State under this Section or under Section XVIII (Stipulated Penalties) shall: (i) be made by a certified or cashier's check or checks made payable to "Wisconsin Department of Natural Resources;" (ii) reference the Lower Fox River and Green Bay Site; (iii) indicate that the payment is being made pursuant to this Consent Decree with NCR Corporation and Sonoco-U.S. Mills, Inc.; and (iv) be sent to:

Wisconsin Department of Natural Resources
Attn: Gregory Hill
101 S. Webster St.
Madison, WI 53703

At the time of payment, Settling Defendants shall ensure that notice that payment has been made

is sent to the State in accordance with Section XXIV (Notices and Submissions).

## XV. INDEMNIFICATION AND INSURANCE

47. <u>Settling Defendants' Indemnification of the United States and the State</u>.

a. The United States and the State do not assume any liability by entering

into this agreement or by virtue of any designation of Settling Defendants as EPA's authorized

representatives under Section 104(e) of CERCLA. Settling Defendants shall indemnify, save

and hold harmless the United States, the State, and their officials, agents, employees, contractors,

subcontractors, or representatives for or from any and all claims or causes of action arising from,

or on account of, negligent or other wrongful acts or omissions of Settling Defendants, their

officers, directors, employees, agents, contractors, subcontractors, and any persons acting on

their behalf or under their control, in carrying out activities pursuant to this Consent Decree,

including, but not limited to, any claims arising from any designation of Settling Defendants as

EPA's authorized representatives under Section 104(e) of CERCLA. Further, the Settling

Defendants agree to pay the United States and the State all costs they incur including, but not

limited to, attorneys fees and other expenses of litigation and settlement arising from, or on

account of, claims made against the United States or the State based on negligent or other

wrongful acts or omissions of Settling Defendants, their officers, directors, employees, agents,

contractors, subcontractors, and any persons acting on their behalf or under their control, in

carrying out activities pursuant to this Consent Decree. Neither the United States nor the State

shall be held out as a party to any contract entered into by or on behalf of Settling Defendants in

carrying out activities pursuant to this Consent Decree. Neither the Settling Defendants nor any such contractor shall be considered an agent of the United States or the State.

        b.      The United States and the State shall give Settling Defendants notice of any claim for which the United States or the State plans to seek indemnification pursuant to Paragraph 47, and shall consult with Settling Defendants prior to settling such claim.

        c.      Nothing contained in this Consent Decree is intended to limit Settling Defendants' potential for insurance coverage.

        48.      Settling Defendants waive all claims against the United States and the State for damages or reimbursement or for set-off of any payments made or to be made to the United States or the State, arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Phase 1 Work on or relating to the Phase 1 Project Area, including, but not limited to, claims on account of construction delays. In addition, Settling Defendants shall indemnify and hold harmless the United States and the State with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Settling Defendants and any person for performance of Phase 1 Work on or relating to the Phase 1 Project Area, including, but not limited to, claims on account of construction delays.

        49.      No later than 15 days before commencing any on-site Phase 1 Remedial Action work under this Consent Decree, Settling Defendants shall secure, and shall maintain until the first anniversary after completion of the Phase 1 Work, comprehensive general liability insurance with limits of at least 5 million dollars, combined single limit, and automobile liability insurance with limits of at least 2 million dollars, combined single limit, naming the United States and the State as additional insureds. In addition, for the duration of this Consent Decree,

Settling Defendants shall satisfy, or shall ensure that their contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Phase 1 Work on behalf of Settling Defendants in furtherance of this Consent Decree. Prior to commencement of the Phase 1 Work under this Consent Decree, Settling Defendants shall provide the Response Agencies certificates of such insurance and a copy of each insurance policy. Settling Defendants shall resubmit such certificates and copies of policies each year on the anniversary of the Date of Entry. If Settling Defendants demonstrate by evidence satisfactory to the Response Agencies that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendants need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor.

## XVI. FORCE MAJEURE EVENTS

50.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure Event, the Settling Defendants or their contractors shall orally notify the Response Agencies' Project Coordinators or, in the event the EPA Project Coordinator is unavailable, Superfund Division Director for EPA Region 5, within 7 working days of when Settling Defendants first knew that the event might cause a delay. Within 14 working days thereafter, Settling Defendants shall provide the Response Agencies a written explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Settling Defendants' rationale for attributing

such delay to a Force Majeure Event if they intend to assert such a claim; and a statement as to whether, in the opinion of the Settling Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. The Settling Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a Force Majeure Event. Failure to comply with the above requirements shall preclude Settling Defendants from asserting any claim of a Force Majeure Event for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Defendants shall be deemed to know of any circumstance of which Settling Defendants, any entity controlled by Settling Defendants, or Settling Defendants' contractors knew or should have known.

51.     If EPA, after a reasonable opportunity for review and comment by WDNR, agrees that the delay or anticipated delay is attributable to a Force Majeure Event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure Event will be extended by EPA, after a reasonable opportunity for review and comment by WDNR, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure Event shall not, of itself, extend the time for performance of any other obligation. If EPA, after a reasonable opportunity for review and comment by WDNR, does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure Event, EPA will notify the Settling Defendants in writing of its decision. If EPA, after a reasonable opportunity for review and comment by WDNR, agrees that the delay is attributable to a Force Majeure Event, EPA will notify the Settling Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure Event.

52.     If the Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XVII (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice.  In any such proceeding, Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure Event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendants complied with the requirements of Paragraph 50, above.  If Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Settling Defendants of the affected obligation of this Consent Decree identified to EPA and the Court.

## XVII.  DISPUTE RESOLUTION

53.     The dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes between Settling Defendants and the Plaintiffs arising under or with respect to this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by the Plaintiffs to enforce obligations of the Settling Defendants that have not been disputed in accordance with this Section.  The dispute resolution procedures of this Section shall not apply to any disputes between Settling Defendants and the Plaintiffs not arising under or with respect to this Consent Decree.

54.     Informal Dispute Resolution.  Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute.  The period for informal negotiations shall not exceed 10 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.  The dispute shall be considered to have arisen when one party sends the other parties a written

Notice of Dispute.

      55.     <u>Formal Dispute Resolution</u>.

      a.     In the event that the parties cannot resolve a dispute by informal negotiations under Paragraph 54, then the position advanced by EPA shall be considered binding unless, within 10 days after the conclusion of the informal negotiation period, Settling Defendants invoke the formal dispute resolution procedures of this Section by serving on the Plaintiffs a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Defendants. The Statement of Position shall specify the Settling Defendants' position as to whether formal dispute resolution should proceed under Paragraph 56 or Paragraph 57.

      b.     Within 30 days after receipt of Settling Defendants' Statement of Position, EPA will serve on Settling Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 56 or 57. Within 10 days after receipt of EPA's Statement of Position, Settling Defendants may submit a Reply.

      c.     If there is disagreement between EPA and the Settling Defendants as to whether dispute resolution should proceed under Paragraph 56 or 57, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if the Settling Defendants ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 56 and 57.

56.     Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph.  For purposes of this Paragraph, the adequacy of any response action includes, without limitation:  (i) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by the Response Agencies under this Consent Decree; and (ii) the adequacy of the performance of response actions taken pursuant to this Consent Decree.  Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendants under this Consent Decree regarding the validity of the ROD's provisions.

a.     An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section.  Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

b.     The Superfund Division Director for EPA Region 5 will issue a final administrative decision resolving the dispute based on the administrative record described in Subparagraph 56.a.  This decision shall be binding upon the Settling Defendants, subject only to the right to seek judicial review pursuant to Subparagraphs 56.c and d.

c.     Any administrative decision made by EPA pursuant to Subparagraph 56.b shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Defendants with the Court and served on all Parties within 20 days of receipt of EPA's decision.  The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree.

-45-

The United States and the State may file a response to Settling Defendants' motion.

d. In proceedings on any dispute governed by this Paragraph, Settling Defendants shall have the burden of demonstrating that the decision of the Superfund Division Director for EPA Region 5 is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Subparagraph 56.a.

57. Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

a. Following receipt of Settling Defendants' Statement of Position submitted pursuant to Paragraph 55, and after service of EPA's Statement of Position and any Reply, the Superfund Division Director for EPA Region 5 will issue a final decision resolving the dispute. The Superfund Division Director's decision shall be binding on the Settling Defendants unless, within 20 days of receipt of the decision, the Settling Defendants file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Defendants' motion.

b. Notwithstanding Paragraph L of Section I (Background) of this Consent Decree, judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

58. The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendants under this

-46-

Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 70. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that the Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XVIII (Stipulated Penalties).

59. <u>Disputes Regarding Specified Future Response Costs</u>. Settling Defendants may contest payment of any Specified Future Response Costs under Paragraph 45 if they determine that the United States or the State has made an accounting error or if they allege that a cost item that is included represents costs that are inconsistent with the NCP. Notice of any such objection shall be given in writing within 30 days of receipt of the bill. A copy of any notice of objection shall be sent to the United States (if the costs of the United States are being disputed) or to the State (if the costs of the State are being disputed) pursuant to Section XXIV (Notices and Submissions). Any such notice of objection shall specifically identify the contested Specified Future Response Costs and the basis for objection. In the event of an objection, all uncontested Specified Future Response Costs shall immediately be paid to the United States or the State in the manner described in Paragraph 45. Upon submitting a notice of objection, the Settling Defendants shall initiate the Dispute Resolution procedures in Section XVII (Dispute Resolution). If the United States or the State prevails in the dispute, within 10 days of the resolution of the dispute, all sums due (with accrued Interest) shall be paid to EPA (if the United States' cost are disputed) or to the State (if the State's costs are disputed) in the manner described in Paragraph 45. If the Settling Defendants prevail concerning any aspect of the

contested costs, the portion of the costs (plus associated accrued interest) for which they did not prevail shall be disbursed to EPA or the State, as appropriate, in the manner described in Paragraph 45; and the amount that was successfully contested need not be paid to EPA or to the State.

## XVIII.  STIPULATED PENALTIES

60.      Settling Defendants shall be liable for stipulated penalties in the amounts set forth in this Section for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVI (Force Majeure Events).   "Compliance" by Settling Defendants shall include completion of the activities under this Consent Decree or any work plan or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans or other documents approved by the Plaintiffs pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

61.      Stipulated Penalty Amounts - Failure to Make Payments.  The Settling Defendants shall be liable for stipulated penalties in the amounts set forth below for each day of violation for the Settling Defendants' failure to make payments as required under this Consent Decree:

| VIOLATION | PENALTY PER DAY | | |
|---|---|---|---|
|  | UP TO 10 DAYS | 11-30 DAYS | OVER 30 DAYS |
| Failure to make any payment of Specified Future Response Costs as required by Subparagraph 45: | $1,000 | $2,500 | $5,000 |

Any stipulated penalties for failure to make payment of Specified Future Response Costs shall be paid to the Party that rendered the bill involved.

62. <u>Stipulated Penalty Amounts - Phase 1 Remedial Design Activities</u>. Settling Defendant NCR Corporation shall be liable for stipulated penalties as follows for each day of violation for failure to any of the Phase 1 Remedial Design Activities as required under Paragraph 9 of this Consent Decree: $1,000 per day for the first seven (7) days and $2,500 per day for each day thereafter. Any stipulated penalties under this Paragraph shall be divided evenly between EPA and the State. If a stipulated penalty is assessed under this Paragraph, a stipulated penalty for the same noncompliance shall not be assessed under the Remedial Design Agreement.

63. <u>Stipulated Penalty Amounts - Phase 1 Work</u>. The Settling Defendants shall be liable for stipulated penalties in the amounts set forth below for each day of violation for failure to perform the Phase 1 Work as required under this Consent Decree:

| VIOLATION | PENALTY PER DAY | | |
|---|---|---|---|
| | UP TO 10 DAYS | 11-30 DAYS | OVER 30 DAYS |
| Failure to perform the Phase 1 Work in accordance with the schedule and requirements established by the SOW and the Phase 1 Work Plans, as mandated by Paragraph 11: | $2,000 | $5,000 | $10,000 |
| Failure to undertake response action as required by Section XIII (Emergency Response): | $5,000 | $10,000 | $20,000 |

Any stipulated penalties under this Paragraph shall be divided evenly between EPA and the State.

64. <u>Stipulated Penalty Amount - Phase 1 Work Takeover</u>. In the event that the Response Agencies assume performance of a portion or all of the Phase 1 Work pursuant to Paragraph 77 of Section XIX (Covenants Not to Sue by Plaintiffs), Settling Defendants shall be liable for a stipulated penalty in the amount of $250,000. Any stipulated penalties under this

Paragraph shall be divided evenly between EPA and the State.

65. <u>Stipulated Penalty Amounts - Phase 1 Work Plans, Reports and Submissions</u>.
Settling Defendants shall be liable for stipulated penalties in the amounts set forth below for
each day of violation for failure to comply with a requirement to submit any Phase 1 Work Plan,
any report, or any other submission under this Consent Decree:

| <u>VIOLATION</u> | <u>PENALTY PER DAY</u> | | |
|---|---|---|---|
| | UP TO<br><u>10 DAYS</u> | 11-30<br><u>DAYS</u> | OVER<br><u>30 DAYS</u> |
| Failure to submit any Phase 1 Work Plan<br> as required by Paragraph 11: | $2,000 | $4,000 | $5,000 |
| Failure to submit any Monthly<br> Progress Report as required by<br> Paragraph 23: | $1,000 | $2,000 | $2,500 |
| Failure to submit a Phase 1 Final<br> Report as required by Paragraph 24: | $2,000 | $4,000 | $5,000 |
| Failure to comply with the Release Reporting<br> requirements under Paragraph 25: | $1,000 | $2,000 | $2,500 |

Any stipulated penalties under this Paragraph shall be divided evenly between EPA and the
State.

66. All stipulated penalties shall begin to accrue on the day after the complete
performance is due or the day a violation occurs, and shall continue to accrue through the final
day of the correction of the noncompliance or completion of the activity. However, stipulated
penalties shall not accrue: (i) with respect to a deficient submission under Section X (Response
Agencies' Approval of Plans and Other Submissions), during the period, if any, beginning on the
31st day after the Response Agencies' receipt of such submission until the date that the
Response Agencies notify Settling Defendants of any deficiency; (ii) with respect to a decision

by the Superfund Division Director for Region 5 under Subparagraph 56.b or 57.a of Section XVII (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendants' Reply to EPA's Statement of Position is received until the date that the Superfund Division Director issues a final decision regarding such dispute; or (iii) with respect to judicial review by this Court of any dispute under Section XVII (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing herein shall prevent the simultaneous accrual of separate stipulated penalties and/or stipulated damages for separate violations of this Consent Decree.

67.     Following the Plaintiffs' determination that Settling Defendants have failed to comply with a requirement of this Consent Decree, the Plaintiffs may give Settling Defendants written notification of the same and describe the noncompliance.  The Plaintiffs may send the Settling Defendants a written demand for the payment of the penalties.  However, penalties shall accrue as provided in the preceding Paragraph regardless of whether the Plaintiffs have notified the Settling Defendants of a violation.

68.     All penalties accruing under this Section shall be due and payable to the United States and the State within 30 days of the Settling Defendants' receipt of a demand for payment by the Plaintiffs, unless Settling Defendants invoke the dispute resolution procedures under Section XVII (Dispute Resolution).  All payments under this Section shall be paid by certified or cashier's check(s), shall indicate that the payment is for stipulated penalties, and shall be submitted to EPA and/or to the State, as appropriate, in the manner specified by Paragraph 46 (Payment Instructions).

69.     The payment of penalties under this Section shall not alter in any way Settling

Defendants' obligation to make payments or complete the performance of the Phase 1 Remedial

Design Activities or the Phase 1 Work required under this Consent Decree.

70.     Penalties shall continue to accrue as provided in Paragraph 66 during any dispute

resolution period, but need not be paid until the following:

a.     If the dispute is resolved by agreement or by an administrative decision

that is not appealed to this Court, accrued penalties determined to be owing shall be paid to

within 15 days of the agreement or the receipt of the administrative decision;

b.     If the dispute is appealed to this Court and the Plaintiffs prevail in whole

or in part, Settling Defendants shall pay all accrued penalties determined by the Court to be

owed to the Plaintiffs within 60 days of receipt of the Court's decision or order, except as

provided in Subparagraph c below;

c.     If the District Court's decision is appealed by any Party, Settling

Defendants shall pay all accrued penalties determined by the District Court to be owing to the

United States or the State into an interest-bearing escrow account within 60 days of receipt of the

Court's decision or order.  Penalties shall be paid into this account as they continue to accrue, at

least every 60 days.  Within 15 days of receipt of the final appellate court decision, the Escrow

Agent shall pay the balance of the account to the Plaintiffs or to Settling Defendants to the extent

that they prevail.

71.     If Settling Defendants fail to pay stipulated penalties when due, the United States

or the State may institute proceedings to collect the penalties, as well as interest.  Settling

Defendants shall pay Interest on the unpaid balance, which shall begin to accrue on the date of

demand made pursuant to Paragraph 68.

72.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in

any way limiting the ability of the United States or the State to seek any other remedies or sanctions available by virtue of Settling Defendants' violation of this Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA; provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

73.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties payable to the United States that have accrued pursuant to this Consent Decree.  Similarly, notwithstanding any other provision of this Section, the State may, in its unreviewable discretion, waive any portion of stipulated penalties payable to the State that have accrued pursuant to this Consent Decree.

## XIX.  COVENANTS NOT TO SUE BY PLAINTIFFS

74.     United States' Covenant Not To Sue.  In consideration of the actions that will be performed and the payments that will be made by the Settling Defendants under the terms of this Consent Decree, and except as specifically provided in Paragraph 76 of this Section, the United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA for performance of the Phase 1 Work and for recovery of Specified Future Response Costs.  This covenant not to sue shall take effect upon the Date of Entry and is conditioned upon the complete and satisfactory performance by Settling Defendants of their obligations under this Consent Decree, including, but not limited to, payment of all Specified Future Response Costs pursuant to Section XIV.  This covenant not to sue extends only to the Settling Defendants and does not extend to any other person.

75.     State's Covenant Not To Sue.  In consideration of the actions that will be

performed and the payments that will be made by the Settling Defendants under the terms of this Consent Decree, and except as specifically provided in Paragraph 76 of this Section, the State covenants not to sue or to take administrative action against Settling Defendants pursuant to Section 107(a) of CERCLA for performance of the Phase 1 Work and for recovery of Specified Future Response Costs. This covenant not to sue shall take effect upon the Date of Entry and is conditioned upon the complete and satisfactory performance by Settling Defendants of their obligations under this Consent Decree, including, but not limited to, payment of all Specified Future Response Costs pursuant to Section XIV. This covenant not to sue extends only to the Settling Defendants and does not extend to any other person.

76. <u>General Reservations of Rights</u>. The covenants not to sue set forth above do not pertain to any matters other than those expressly specified in Paragraphs 74 and Paragraph 75. The United States and the State reserve, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all other matters, including but not limited to, the following:

        a.      claims based on a failure by Settling Defendants to meet a requirement of this Consent Decree;

        b.      liability for costs not included within the definition of Specified Future Response Costs;

        c.      liability for performance of response action other than the Phase 1 Work;

        d.      criminal liability;

        e.      liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

        f.      liability arising from the past, present, or future disposal, release or threat

of release of Waste Materials outside of the Site; and

g.      liability for costs incurred or to be incurred by the Agency for Toxic Substances and Disease Registry related to the Site.

77.      <u>Work Takeover</u>.

a.      In the event EPA, after consultation with WDNR, determines that Settling Defendants have (i) ceased implementation of any portion of the Phase 1 Work, or (ii) are seriously or repeatedly deficient or late in their performance of the Phase 1 Work, or (iii) are implementing the Phase 1 Work in a manner which may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to the Settling Defendants.  Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Defendants a period of 10 days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

b.      If, after expiration of the 10-day notice period specified in Subparagraph 77.a, Settling Defendants have not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portions of the Phase 1 Work as EPA deems necessary ("Work Takeover").  EPA shall notify Settling Defendants in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Subparagraph 77.b.

c.      Settling Defendants may invoke the procedures set forth in Section XVII (Dispute Resolution), Paragraph 56, to dispute EPA's implementation of a Work Takeover under Subparagraph 77.b.  However, notwithstanding Settling Defendants' invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole

-55-

discretion commence and continue a Work Takeover under Subparagraph 77.b until the earlier of (i) the date that Settling Defendants remedy, to EPA' s satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice or (ii) the date that a final decision is rendered in accordance with Section XVII (Dispute Resolution), Paragraph 56, requiring EPA to terminate such Work Takeover.

        d.      After commencement and for the duration of any Work Takeover, EPA shall have immediate access to and benefit of any Performance Guarantee(s) provided pursuant to Section XII of this Consent Decree, in accordance with the provisions of Paragraph 41 of that Section.  If and to the extent that EPA is unable to secure the resources guaranteed under any such performance guarantee(s) and the Settling Defendants fail to remit a cash amount up to but not exceeding the estimated cost of the remaining Work to be performed, all in accordance with the provisions of Paragraph 41, any unreimbursed costs incurred by EPA in performing Phase 1 Work under the Work Takeover shall be considered Specified Future Response Costs that Settling Defendants shall pay pursuant to Section XIV (Payments for Response Costs).

     78.      Notwithstanding any other provision of this Consent Decree, the United States and the State retain all authority and reserve all rights to take any and all response actions authorized by law.

## XX.  COVENANTS BY SETTLING DEFENDANTS

     79.      <u>Covenant Not to Sue</u>.  Subject to the reservations in Paragraph 80, Settling Defendants hereby covenant not to sue and agree not to assert any claims or causes of action against the United States or the State with respect to the Phase 1 Work and Specified Future Response Costs or this Consent Decree, including, but not limited to:

        a.      any direct or indirect claim for reimbursement from the Hazardous

Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

b. any claims against the United States (including any department, agency or instrumentality of the United States) or the State (including any department or agency of the State) under CERCLA Sections 107 or 113 related to the Phase 1 Work or Specified Future Response Costs; or

c. any claims against the United States (including any department, agency or instrumentality of the United States) or the State (including any department or agency of the State) under the United States Constitution, the Wisconsin Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law, related to the Phase 1 Work or Specified Future Response Costs.

80. The Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Defendants' plans or activities. The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of

sovereign immunity is found in a statute other than CERCLA.

81.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

82.     <u>Waiver of Claims Against De Micromis Parties</u>.

        a.     Settling Defendants agree not to assert any claims and to waive all claims or causes of action that they may have for all matters relating to the Site, including for contribution, against any person where the person's liability to Settling Defendants with respect to the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if the materials contributed by such person to the Site contained less than 2.0 kilograms of polychlorinated biphenyls (which amounts to 0.002% of the total mass of polychlorinated biphenyls remaining at the Site, as estimated by the December 2002 Remedial Investigation Report).

        b.     This waiver shall not apply to any claim or cause of action against any person meeting the above criteria if EPA has determined that the materials contributed to the Site by such person contributed or could contribute significantly to the costs of response at the Site. This waiver also shall not apply with respect to any defense, claim, or cause of action that a Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendant.

## XXI.     <u>EFFECT OF SETTLEMENT AND CONTRIBUTION PROTECTION</u>

83.     Except as provided in Paragraph 82 (Waiver of Claims Against <u>De</u> <u>Micromis</u> Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any

cause of action to, any person not a Party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Decree may have under applicable law. Except as provided in Paragraph 82 (Waiver of Claims Against De Micromis Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

84. <u>Statutory Contribution Protection</u>. The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendants are entitled, as of the Date of Entry, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2) for matters addressed in this Consent Decree. For the purpose of this Paragraph 84, the "matters addressed" by this Consent Decree are the Phase 1 Work and Specified Future Response Costs. Notwithstanding the foregoing, the Parties specifically recognize that the Settling Defendants are performing the Phase 1 Work and paying the Specified Future Response Costs pursuant to an interim allocation of funding between them, and nothing in this Consent Decree shall prohibit either Settling Defendant from seeking to re-allocate the cost of the Phase 1 Work or the Specified Future Response Costs between them by means of any claim allowed under federal or state law, including but not limited to CERCLA Section 113, 42 U.S.C. § 9613.

85. Each Settling Defendant agrees that, with respect to any suit or claim for contribution brought by it for matters related to this Consent Decree, it will notify the United States and the State in writing at the same time it files or asserts the claim in litigation.

86. Each Settling Defendant also agrees that, with respect to any suit or claim for

contribution brought against it for matters related to this Consent Decree, it will notify in writing the United States and the State within 10 days of service of the complaint upon it. In addition, each Settling Defendant shall notify the United States and the State within 10 days of service or receipt of any Motion for Summary Judgment and within 10 days of receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

87. <u>Waiver of Claim Splitting Defenses</u>. In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case; <u>provided</u>, <u>however</u>, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XIX (Covenants Not to Sue by Plaintiffs).

## XXII. <u>ACCESS TO INFORMATION</u>

88. Settling Defendants shall provide to the Response Agencies, upon request, copies of all documents and information within their possession or control or that of their contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Phase 1 Work. Settling Defendants shall also make available to the Response Agencies, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the

Phase 1 Work.

       89.    <u>Business Confidential and Privileged Documents</u>.

       a.    Settling Defendants may assert business confidentiality claims covering part or all of the documents or information submitted to Plaintiffs under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies documents or information when they are submitted to EPA and the State, or if EPA has notified Settling Defendants that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA, the public may be given access to such documents or information without further notice to Settling Defendants.

       b.    The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If the Settling Defendants assert such a privilege in lieu of providing documents, they shall provide the Plaintiffs with the following:  (i) the title of the document, record, or information; (ii) the date of the document, record, or information; (iii) the name and title of the author of the document, record, or information; (iv) the name and title of each addressee and recipient; (v) a description of the contents of the document, record, or information: and (vi) the privilege asserted by Settling Defendants.  However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

       90.    No claim of confidentiality or privilege shall be made with respect to any data generated pursuant to the requirements of this Consent Decree, including, but not limited to, all

sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

## XXIII.  RETENTION OF RECORDS

91.     Until 10 years after the Settling Defendants' completion of the Phase 1 Work, each Settling Defendant shall preserve and retain all records and documents now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Phase 1 Work or liability of any person for response actions conducted and to be conducted at the Site, regardless of any corporate retention policy to the contrary. Until 10 years after the completion of the Phase 1 Work, Settling Defendants shall also instruct their contractors and agents to preserve all documents, records, and information of whatever kind, nature or description relating to the performance of the Phase 1 Work.  At any time more than 5 years after completion of the Phase 1 Work, the Settling Defendants may request Plaintiffs' assent to terminate the document retention period earlier for specified categories of records and documents.  If Plaintiffs assent to any such request, the Plaintiffs assent shall be given in writing.

92.     At the conclusion of this document retention period, Settling Defendants shall notify the United States and the State at least 90 days prior to the destruction of any such records or documents, and, upon request by the United States or the State, Settling Defendants shall deliver any such records or documents to EPA or WDNR.  The Settling Defendants may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If the Settling Defendants assert such a privilege, they shall provide the Plaintiffs with the following:  (i) the title of the document, record, or information; (ii) the date of the document, record, or information; (iii) the name and

title of the author of the document, record, or information; (iv) the name and title of each

addressee and recipient; (v) a description of the subject of the document, record, or information;

and (vi) the privilege asserted by Settling Defendants. However, no documents, reports or other

information created or generated pursuant to the requirements of the Consent Decree shall be

withheld on the grounds that they are privileged.

93.     Each Settling Defendant hereby certifies individually that, to the best of its

knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed

or otherwise disposed of any records, documents or other information relating to its potential

liability regarding the Site since notification of potential liability by the United States or the

State or the filing of suit against it regarding the Site and that it has fully complied with any and

all requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C.

§§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

## XXIV. NOTICES AND SUBMISSIONS

94.     Whenever, under the terms of this Consent Decree, written notice is required to be

given or a report or other document is required to be sent by one Party to another, it shall be

directed to the individuals at the addresses specified below, unless those individuals or their

successors give notice of a change to the other Parties in writing. All notices and submissions

shall be considered effective upon receipt, unless otherwise provided. Written notice as

specified herein shall constitute complete satisfaction of any written notice requirement of the

Consent Decree with respect to the United States, the State, and the Settling Defendants,

respectively.

As to the United States:

    As to DOJ:

    Chief, Environmental Enforcement Section
    Environment and Natural Resources Division
    U.S. Department of Justice (DJ # 90-11-2-1045/5)

| U.S. Mail: | Overnight Delivery Service: |
|---|---|
| P.O. Box 7611 | 601 D Street, N.W. – Room 2121 |
| Washington, D.C.  20044-7611 | Washington, DC  20004 |

    As to EPA:

    Director, Superfund Division
    U.S. Environmental Protection Agency
    Region 5
    77 West Jackson Blvd.
    Chicago, IL   60604

As to the State:

    As to WDOJ:

    Wisconsin Department of Justice
    Division of Legal Services
    Environmental Protection Unit

| U.S. Mail: | Overnight Delivery Service: |
|---|---|
| P.O. Box 7857 | 17 West Main Street |
| Madison, WI  53707-7857 | Madison, WI  53702 |

    As to WDNR:

    Gregory Hill
    State Project Coordinator
    Wisconsin Department of Natural Resources

| U.S. Mail: | Overnight Delivery Service: |
|---|---|
| P.O. Box 7921 | 101 S. Webster St. |
| Madison, WI  53707-7921 | Madison, WI   53703 |

As to the Settling Defendants:

      <u>As to NCR Corporation</u>

      General Counsel
      NCR Corporation
      Law Department
      1700 South Patterson Blvd.
      Dayton, OH   45479

      <u>with a copy to</u>:

      J. Andrew Schlickman
      Sidley Austin LLP
      1 South Dearborn Street
      Chicago, IL  60603

      <u>As to Sonoco-U.S. Mills, Inc.</u>

      Thomas R. Gottshall
      Haynsworth Sinkler Boyd, P.A.
      1201 Main Street, 22nd Floor
      Columbia, SC  29201-3226

      <u>with a copy to</u>:

      John M. Van Lieshout
      Reinhart Boerner Van Deuren S.C.
      1000 North Water Street, P.O. Box 2965
      Milwaukee, WI  53201-2965

## XXV.  <u>EFFECTIVE DATE</u>

95.     The effective date of this Consent Decree shall be the Date of Entry; <u>provided</u>, <u>however</u>, that the Settling Defendants hereby agree that they shall be bound upon the Date of Lodging to comply with obligations of the Settling Defendants specified in this Consent Decree as accruing upon the Date of Lodging.  In the event the Plaintiffs withdraw or withhold consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to comply with requirements of this Consent Decree upon the Date of Lodging shall terminate.

## XXVI.  RETENTION OF JURISDICTION

96.     This Court retains jurisdiction over both the subject matter of this Consent Decree and the Settling Defendants for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XVII (Dispute Resolution) hereof.

## XXVII.  APPENDICES

97.     The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the SOW.

"Appendix B" is the Remedial Design Agreement.

## XXVIII.  COMMUNITY RELATIONS

98.     Settling Defendants shall propose to the Response Agencies the Settling Defendants' participation in the Community Relations Plan to be developed by the Response Agencies.  The Response Agencies will determine the appropriate role for the Settling Defendants under the plan.  Settling Defendants shall also cooperate with the Response Agencies in providing information regarding the Phase 1 Work to the public.  As requested by the Response Agencies, Settling Defendants shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by the Response Agencies to explain activities relating to the Phase 1 Work.

## XXIX. <u>MODIFICATION</u>

99.     There shall be no material modifications to the terms of this Consent Decree without written agreement of the Parties and approval of the Court.  Non-material modifications of the Consent Decree may be made by written agreement of the Parties, without approval of the Court, but shall be filed in this action.  Schedules specified in this Consent Decree for completion of the Phase 1 Work may be modified by a written agreement between the Response Agencies and the Settling Defendants, without Court approval, so long as the schedule changes constitute a non-material modification of the Consent Decree.

100.     Except as provided in Paragraph 12 ("Modification of the SOW or the Phase 1 Work Plans"), no material modifications shall be made to the SOW without written notification to and written approval of the United States, the State, Settling Defendants, and the Court. Modifications to the SOW that do not materially alter that document may be made by written agreement between the Response Agencies and the Settling Defendants.

101.     Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XXX. <u>LODGING AND OPPORTUNITY FOR PUBLIC COMMENT</u>

102.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

103.     If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXI.  SIGNATORIES/SERVICE

104.     The undersigned representatives of each Settling Defendant, the undersigned representatives of the State, and the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice each certify that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

105.     Each Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified the Settling Defendants in writing that it no longer supports entry of the Consent Decree.

106.     Each Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree.  Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.  The parties agree that Settling Defendants need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXXII.  FINAL JUDGMENT

126.     This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the parties with respect to the settlement

embodied in the Consent Decree.  The parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

127.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and the Settling Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.


SO ORDERED.

*THE COURT'S APPROVAL AND ENTRY OF THIS CONSENT DECREE SHALL BE SIGNIFIED BY ENTRY OF A SEPARATE ORDER IN ACCORDANCE WITH THE COURT'S ELECTRONIC CASE FILING POLICIES AND PROCEDURES MANUAL*

_____
United States District Judge

THE UNDERSIGNED PARTY enters into this "Consent Decree for Performance of Phase 1 of the Remedial Action in Operable Units 2-5 of the Lower Fox River and Green Bay Site."

**FOR THE UNITED STATES OF AMERICA**

3/27/2006
Date

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

3/27/2006
Date

RANDALL M. STONE, Senior Lawyer
JEFFREY A. SPECTOR, Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611

STEVEN M. BISKUPIC
United States Attorney

MATTHEW V. RICHMOND
Assistant United States Attorney
Eastern District of Wisconsin
U.S. Courthouse and Federal Building
Room 530
517 E. Wisconsin Avenue
Milwaukee, WI 53202

THE UNDERSIGNED PARTY enters into this "Consent Decree for Performance of Phase 1 of the Remedial Action in Operable Units 2-5 of the Lower Fox River and Green Bay Site."

4/3/06
Date

BHARAT MATHUR
Acting Regional Administrator
U.S. Environmental Protection Agency
Region 5
77 West Jackson Boulevard
Chicago, IL   60604

March 23, 2006
Date

BERTRAM C. FREY
Acting Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 West Jackson Boulevard
Chicago, IL   60604

3-20-06
Date

RICHARD MURAWSKI
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 West Jackson Boulevard
Chicago, IL   60604

THE UNDERSIGNED PARTY enters into this "Consent Decree for Performance of Phase 1 of the Remedial Action in Operable Units 2-5 of the Lower Fox River and Green Bay Site."

**FOR THE STATE OF WISCONSIN**

3/13/06
Date

P. SCOTT HASSETT
Secretary
Wisconsin Department of Natural Resources
101 South Webster Street
Madison, WI 53703


Date

Wisconsin Department of Justice
17 West Main Street
Madison, WI 53702

For the State of Wisconsin

JERRY L. HANCOCK
Assistant Attorney General
Wisconsin Department of Justice
17 West Main Street
Madison, WI 53702
(608) 266-1221

THE UNDERSIGNED PARTY enters into this "Consent Decree for Performance of Phase 1 of the Remedial Action in Operable Units 2-5 of the Lower Fox River and Green Bay Site."

**FOR NCR CORPORATION**

March 8, 2006
Date

Signature: _____
Name (print):  Jon S. Hoak
Title:  SVP, General Counsel & Secretary
Address:  1700 S. Patterson Blvd.
               Dayton, OH  45479
               937-445-2900
               _____

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print):  Jon S. Hoak
Title:  SVP, General Counsel & Secretary
Address:  1700 S. Patterson Blvd.
               Dayton, OH  45479
               _____

Ph. Number:           937-445-2900

THE UNDERSIGNED PARTY enters into this "Consent Decree for Performance of Phase 1 of the Remedial Action in Operable Units 2-5 of the Lower Fox River and Green Bay Site."

**FOR SONOCO-U.S. MILLS, INC.**

MARCH 9, 2006
Date

Signature: _Tim Davis_
Name (print): _TIM DAVIS_
Title: _PRESIDENT_
Address:
_824 FORT HOWARD AVE._
_DE PERE, WI 54115_

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name (print): Thomas R. Gottshall, Esq.
Title: c/o Haynsworth Sinkler Boyd PA
Address: P.O. Box 11889
1201 Main Street Suite 2200
Columbia, S.C. 29211-1889
Ph. Number: 803 - 779 - 3080