UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA and
the STATE OF WISCONSIN,

          Plaintiffs,

   v.

NCR CORPORATION and
SONOCO-U.S. MILLS, INC. (formerly
known as U.S. Paper Mills Corp.),

         Defendants.

CIVIL ACTION NO. 06-CV-00484

The Honorable Lynn Adelman

**BRIEF IN SUPPORT OF THE**
**UNITED STATES' UNOPPOSED MOTION TO ENTER CONSENT DECREE**

After consideration of all public comments received concerning the proposed Consent

Decree lodged with the Court in this matter on April 12, 2006, the United States continues to

believe that the proposed settlement is fair, reasonable, and in the public interest, and

accordingly asks the Court to approve and enter it as a final judgment.

In several related cases, this Court has considered and approved other partial settlements

relating to polychlorinated biphenyl ("PCB") contamination at the Lower Fox River and Green

Bay Site, and has issued opinions granting entry of Consent Decrees in two of those cases where

the United States had received adverse public comments. See United States v. Fort James

Operating Co., 313 F. Supp. 2d 902 (E.D. Wis. 2004); United States v. P.H. Glatfelter Co.,

No. 03-C-0949 (E.D. Wis. Apr. 4, 2004). The U.S. Department of Justice also solicited public

comment on the pending proposed Consent Decree in this case. As discussed below, two public comments were submitted, neither of which opposes entry of the Consent Decree. The United States, the State of Wisconsin, and the Defendants all support entry of the Consent Decree, and the United States is therefore moving that the Court approve the Consent Decree (with one minor modification discussed below) by entry of the accompanying proposed "Order Entering Consent Decree."

Section 1 of this Brief provides pertinent background information and a short summary of the terms of the Consent Decree. Section 2 reviews the points made by the two public comments on the Decree. Section 3 demonstrates that the Decree should be approved and entered under the legal standard articulated by this Court in its opinions in the related Fort James and P.H. Glatfelter cases.

## 1.    Background and Summary of the Proposed Settlement

The United States and the State of Wisconsin filed a Complaint in this action alleging that Defendants NCR Corporation and Sonoco-U.S. Mills, Inc. are among the parties liable for PCB contamination at the Lower Fox River and Green Bay Site in northeastern Wisconsin (the "Site"), pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 et seq. ("CERCLA"). Sediments in the Lower Fox River and in Green Bay are contaminated with PCBs that were discharged in connection with the production and reprocessing of PCB-containing carbonless copy paper at multiple facilities in the Fox River Valley.

The Consent Decree would require the Defendants to dredge and dispose of the most highly-contaminated sediments in the River on an expedited basis, at an estimated cost of

$30 million.  That environmental cleanup work would be performed as an initial phase of the overall cleanup remedy for the downstream portions of the Site, in an area that has been designated as the "Phase 1 Project Area."  The Phase 1 Project Area is just downstream from the De Pere dam, along the west bank of the Lower Fox River, near the City of Green Bay.  The United States Environmental Protection Agency and the Wisconsin Department of Natural Resources determined that the remedial action for the downstream portions of the Site (designated as Operable Units 2-5) should be conducted in two phases to expedite the response in the Phase 1 Project Area.  Phase 1 of the remedial action would address PCB-contaminated sediments in the Phase 1 Project Area, which have especially high PCB concentrations, and the accelerated removal of PCBs in that area would therefore have significant benefits to the environment and public health.  All remaining elements of the remedial action would be implemented in Phase 2.

Design activities for the Phase 1 Project have already begun.  The Decree would require the Defendants to start removing contaminated sediment from the Phase 1 Project Area by no later than May 1, 2007.  The Consent Decree would not resolve the Defendants' potential liability for Phase 2 of the remedial action or for any other response activities or response costs relating to the Phase 1 Project Area or other areas of the Site.

In accordance with U.S. Department of Justice policy and CERCLA Section 122(d)(2), 42 U.S.C. § 9622(d)(2), the United States published notice of the lodging of the proposed Consent Decree in the Federal Register on April 26, 2006, which commenced a thirty day public comment period.  71 Fed. Reg. 24761 (Apr. 26, 2006).  The United States received two sets of comments:  one set from the Environmental, Health and Safety Division of the Oneida Tribe of

Indians of Wisconsin (the "Oneida Environmental Division") and another set from an individual citizen, Marion W. Taylor, Ph.D. ("Dr. Taylor"). As discussed in Section 2 of this brief, the Oneida Environmental Division's comments prompted one minor language modification that should be incorporated into the Decree, but neither of the commenters opposes entry of the Consent Decree.

The United States is asking that the Court enter the accompanying "Order Entering Consent Decree" because the United States continues to believe that the Consent Decree is fair, reasonable, and consistent with the purposes of CERCLA.

### 2.    Points Made in the Public Comments

Copies of the two comment letters that the United States received are reproduced at Tab A to this brief.

The comments submitted by Dr. Taylor expressed hope that the Consent Decree will help accomplish a PCB cleanup at the Site. Dr. Taylor noted that members of her family have lived near Sonoco-U.S. Mills' facility on the River for decades, and that she and other members of her family have long been concerned about pollution of the River and potential health effects of exposure to PCBs.

The Oneida Environmental Division's comments raised two issues concerning particular language in appendices to the Consent Decree relating to the requirements for landfill disposal of the PCB-contaminated sediment that would be dredged from the River.

> First, the comments pointed to a specific sentence that referred only to one set of Wisconsin state regulatory requirements governing certain landfill facilities, and suggested that the sentence be modified to make clear that any landfill receiving dredged sediment from the Fox River would need to comply with all applicable federal and state requirements.

- 4 -

<u>Second</u>, the comments noted the requirement in a Consent Decree appendix that Defendants "dispose of the dewatered sediments in upland landfills," and asked what was meant by the term "upland landfill."

Recognizing the Oneida Tribe's special role as a party to a number of important intergovernmental agreements concerning the Site, the U.S. Department of Justice met with representatives of the Tribe to discuss the issues raised by the comments. After that meeting, the United States and the other parties took several steps to address those issues. The parties prepared and executed a minor modification to Consent Decree Appendix B, Attachment A (the Statement of Work for an Administrative Order on Consent that requires NCR Corp. and Fort James Operating Company to design the remedy for the downstream portions of the Site), to clarify that sediment dredged from the Site will need to be disposed of in accordance with all applicable federal and state requirements. The United States sent a copy of that modification to the Oneida Environmental Division with a July 27, 2006 letter which also explained that the Consent Decree appendix used the term "upland landfill" to refer to a traditional land-based disposal facility, as opposed to an in-water confined disposal facility. The Oneida Environmental Division responded with an August 4, 2006 letter confirming that the issues raised by its comments have been addressed and that the Environmental Division does not oppose entry of the Consent Decree. Copies of those letters are reproduced at Tab B to this brief.

3.      **The Court Should Enter the Accompanying Proposed "Order Entering Consent Decree" Because the Decree is Fair, Reasonable, and Consistent with the Purposes of CERCLA.**

The accompanying proposed "Order Entering Consent Decree" would approve and enter the Decree with the one minor modification suggested by the Oneida Environmental Division. A

- 5 -

copy of that agreed modification to Consent Decree Appendix B is attached at Tab C to this brief. All parties to this action support entry of the Decree with that change.[1]

As this Court recognized in approving an earlier settlement requiring cleanup work in another portion of the Fox River, a proposed Consent Decree in a case like this should be approved if it is "reasonable, fair, and consistent with the statutory purposes of CERCLA." P.H. Glatfelter, slip op. at 3 (citing United States v. Davis, 261 F.3d 1, 20 (1st Cir. 2001).[2] Like that other settlement, the Decree here is fully consistent with the goals underlying CERCLA because: (1) it "ensures prompt performance of the selected cleanup remedy" at part of the Fox River Site; (2) it "requires the responsible parties to fund the cleanup, thereby imposing accountability on defendants;" and (3) it "is consistent with CERCLA's strong statutory preference for settlement, thereby allowing scarce resources to be applied towards cleanup rather than towards litigation and transaction costs." Id. at 5. The Decree also is fair and reasonable. It was the product of several months of difficult multi-party negotiations in late 2005 and early 2006. Those negotiations "were conducted at arms length by legal and technical representatives from the government agencies responsible for implementing and enforcing CERCLA." Id.[3] The

---

[1]  Specifically, NCR Corp. signed the relevant modification to the Administrative Order on Consent ("AOC") that is Appendix B to the Consent Decree and counsel for the State of Wisconsin, NCR Corp., and Sonoco-U.S. Mills, Inc. have authorized counsel for the United States to represent to the Court that their clients agree to incorporate the modified AOC into the final Consent Decree.

[2]  Although the settlement in Fort James mainly addressed liability for natural resource damages under CERCLA, rather than responsibility for CERCLA cleanup activities, the Court found that the same standard of review applied. 313 F. Supp. 2d at 906 (citing Davis and other cases as support for the proposition that a CERCLA consent decree must be "reasonable, fair, and consistent with the statutory purposes of CERCLA").

[3]  Some sense of the negotiations can be gained from public disclosures that the corporate parent of Sonoco-U.S. Mills, Inc. – Sonoco Products Company – made in its periodic filings with the Securities and Exchange Commission. The company's October 2005 quarterly report included the following disclosure:

settlement is substantively fair and reasonable because it would require specific cleanup action in the Phase 1 Project Area on a priority basis, but it would not resolve the Defendants' potential liability for additional response activities or response costs relating to the Phase 1 Project Area or other areas of the Site.

### Conclusion

For the foregoing reasons, the Court should enter the accompanying proposed "Order Entering Consent Decree."

---

On October 21, 2005 the United States Environmental Protection Agency (EPA) orally notified Sonoco U. S. Mills, Inc. (U. S. Mills), a wholly-owned subsidiary of the Company, that EPA may issue a Unilateral Order under Section 106 of the Comprehensive Environmental Response, Compensation and Liability Act requiring U. S. Mills and another unrelated party to undertake a program to remove and dispose of PCB contaminated sediments in a portion of the lower Fox River in Wisconsin, unless U. S. Mills voluntarily agrees to play a primary role in the cleanup of that portion of the river. . . . Although U.S. Mills intends to continue to seek a resolution of these issues with EPA and the other party, should EPA proceed as threatened, U. S. Mills intends to vigorously protect its interests.

After months of negotiations, the company's February 2006 "Form 10-K" annual report signaled progress on a side agreement between the two companies, although the terms of a settlement with the government had not yet been finalized; it said that "U.S. Mills and the other party have reached agreement that each would fund 50% of the costs of remediation, which is currently estimated to be between $25 million and $30 million for the project as a whole." Finally, the company's April 2006 quarterly report indicated as follows: "NCR and U.S. Mills agreed to a Consent Decree with the United States and the State of Wisconsin. Pursuant to this Consent Decree, NCR and U.S. Mills would start removing contaminated sediment no later than May 1, 2007 at a contaminated segment on the Fox River, a site just below the De Pere Dam. Although the defendants specifically did not admit liability for the allegations of the complaint, they are bound by the terms of the Consent Decree." All of those SEC filings can be accessed at the company's website at: http://www.sonoco.com/topnav/investor+relations/sec+filings.htm.

- 7 -

Respectfully submitted,

For the United States of America

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

Dated:          August 16, 2006          *s/ Randall M. Stone*
                                         RANDALL M. STONE, Senior Attorney
                                         JEFFREY A. SPECTOR, Trial Attorney
                                         Environmental Enforcement Section
                                         Environment and Natural Resources Division
                                         U.S. Department of Justice
                                         P.O. Box 7611
                                         Washington, DC 20044-7611
                                         Telephone:    (202) 514-1308
                                         Facsimile:    (202) 616-6584
                                         E-Mail:       randall.stone@usdoj.gov


                                         STEVEN M. BISKUPIC
                                         United States Attorney


                                         MATTHEW V. RICHMOND
                                         Assistant United States Attorney
                                         Eastern District of Wisconsin
                                         U.S. Courthouse and Federal Building - Room 530
                                         517 E. Wisconsin Avenue
                                         Milwaukee, WI 53202

- 8 -

## CERTIFICATE OF SERVICE

       Pursuant to Paragraphs 94 and 106 of the Consent Decree lodged with the Court on this date, I hereby certify that copies of the foregoing Brief in Support of the United States' Unopposed Motion to Enter Consent Decree were served on this date by the Court's Electronic Case filing system and by first-class mail, postage prepaid, upon the following individuals:

General Counsel
NCR Corporation
Law Department
1700 South Patterson Blvd.
Dayton, OH  45479

J. Andrew Schlickman
Sidley Austin LLP
1 South Dearborn Street
Chicago, IL  60603

Thomas R. Gottshall
Haynsworth Sinkler Boyd, P.A.
1201 Main Street, 22nd Floor
Columbia, SC  29201-3226

John M. Van Lieshout
Reinhart Boerner Van Deuren S.C.
1000 North Water Street, P.O. Box 2965
Milwaukee, WI  53201-2965

Wisconsin Department of Justice
Division of Legal Services
Environmental Protection Unit
P.O. Box 7857
Madison, WI  53707-7857

Dated:      August 16, 2006      *s/ Randall M. Stone*

Tab A:        Public Comments on Proposed Consent Decree

PCB's - Fox River - Wisconsin

My father started writing letters
+ complaining In the 1950's when re.s.
Paper mill began putting
PCB's in the Fox River in
DePere. The only thing he
accomplished was to get
rid of the Rats. My young
sister who even worked on the
Fox River died of the kind of
lung cancer one gets from
PCB's in '91. Her daughter is also
mentally disabled from them
also. I'm now her legal
guardian and have had to
be up here since then. Having
lived in the Chicago area all
my life it's been difficult.
Soudan, formerly U.S. Paper is only
two blocks south of here. Hope
you can accomplish something
on PCB's. Thank you. (I'm 85)
Marion W. Taylor Ph.D.
659 River av DePere, Wis. 54115
5-22-06

# Oneida Tribe of Indians of Wisconsin

PO Box 365
3759 W. Mason St.
Oneida, WI 54155

Phone: (920) 496-5330
Fax: (920) 496-7883

## Environmental, Health & Safety Division



**MAIN OFFICE**
• Administration
• Eco-Services
• Wells & Septic
• Environmental Quality
• Health & Industrial Services

**CONSERVATION FIELD OFFICE**
N8305 Olson Road
Oneida, WI 54155
Phone: (920) 869-1450
Fax: (920) 869-2743

May 25, 2006


Assistant Attorney General
Environment and Natural Resources Division
P. O. Box 7611
U. S. Department of Justice
Washington, DC 20044-7611

> **RE:** **United States and the State of Wisconsin v. NCR Corporation and Sonoco - U. S. Mills, Inc.**
> **Civil Action No. 06-CV-00484 (E.D. Wis.)**
> **D. J. Ref. No. 90-11-2-1045/5**

Dear Sir or Madam:

The Oneida Environmental, Health and Safety Division ("Oneida Environmental Division") is concerned about some provisions of the proposed Consent Decree for Performance of Phase I of the Remedial Action in Operable Units 2-5 of the Lower Fox River and Green Bay Site in <u>United States and the State of Wisconsin v. NCR Corporation and Sonoco - U. S. Mills, Inc.</u> The Consent Decree was published in the Federal Register on April 26, 2006. The Oneida Environmental Division provides the following comments for consideration before the Consent Decree is submitted for final approval.

First, the Statement of Work for the Remedial Design for Operable Units 2, 3, 4 and 5 states "Sediment disposal includes the transportation of the sediment to a dedicated NR 500 engineered landfill." (Consent Order Attachment A, page 2). This statement appears in the Description of Remedial Action/Performance Standards for Operable Units 3 and 4. This reference is to Wisconsin law and may not incorporate all regulations that are applicable to the waste. The NR 500 series provides General Solid Waste Management Requirements but does not regulate hazardous or toxic waste, which the cleanup action proposed for Operable Unit 4 likely will generate. Further, this statement does not reference NR 600 regulations, which the Oneida Environmental Division believes are applicable to landfills that will be accepting PCBs. The Statement of Work also does not recognize Toxic Substances Control Act requirements that are more stringent than NR 500 and very likely applicable to disposal of sediments from Operable Unit 4. However, Appendix A (Statement of Work for Phase I of the Remedial Action

DEPARTMENT OF JUSTICE

MAY 30 2006

ENRD
ENFORCEMENT RECORDS
90-11-2-1045/5

at Operable Units 2-5) specifies that "[s]ediments classified as Toxic Substances Control Act ("TSCA") wastes shall be disposed of in accordance with TSCA disposal requirements." While Appendix A contemplates that TSCA sediments will be generated and require disposal, Attachment A does not provide for disposal that complies with TSCA. Finally, the statement in Attachment A refers to a landfill that complies with Wisconsin law, which may be interpreted to rule out the use of out-of-state facilities for sediment disposal. It does not appear to be the intent of the parties involved to put this limitation on potential sites; for example, the draft Basis of Design Report (another product of the NRDA settlement process) refers to out-of-state TSCA facilities. In order to be more clear on this subject, the Consent Decree should refer to all applicable state and federal regulations related to disposal of the contaminated sediments.

Second, the Statement of Work for Phase I of the Remedial Action at Operable Units 2-5 states "[t]he Settling Defendants will dewater removed sediments (as needed), treat the associated wastewater, and dispose of the dewatered sediments in upland landfills." (Appendix A, Page 1). The Oneida Environmental Division is concerned that the term "upland landfill" is not defined in the Consent Decree. More definition is needed to understand what landfills would be acceptable for final disposal of sediments that are removed pursuant to this Consent Decree.

The Oneida Tribe continues to review technical and legal aspects of this and related matters and reserves the right to make further comment through other proceedings. Thank you for your consideration.

Sincerely,

Patrick J Pelky

Patrick Pelky, Director
Oneida Environmental, Health & Safety Division

Tab B:      Correspondence with Oneida Environmental Division



**U.S. Department of Justice**

Environment and Natural Resources Division

BSG:RMS

Environmental Enforcement Section
P.O. Box 7611                           Telephone: (202) 514-1308
Washington, DC  20044-7611              Facsimile:  (202) 616-6584

July 27, 2006

**VIA FACSIMILE AND U.S. MAIL**

Patrick J. Pelky, Director
Oneida Environmental, Health & Safety Division
P.O. Box 365
Oneida, WI  54155

Fax:    (920) 869-2743

> Re:    **Issues Raised by Comments on Proposed Consent Decree in**
>        **United States and the State of Wisconsin v. NRC Corporation and**
>        **Sonoco-U.S. Mills, Inc., Civil Action No. 06-CV-00484 (E.D. Wis.)**

Dear Mr. Pelky:

I would like to thank you and the other representatives of the Oneida Tribe of Indians of Wisconsin for meeting with me on June 7 to discuss the questions raised by the Oneida Environmental, Health & Safety Division's May 25, 2006 comments on the pending proposed Consent Decree for Performance of Phase I of the Remedial Action in Operable Units 2-5 of the Lower Fox River and Green Bay Site. I thought that our meeting was productive and particularly appropriate, given the Oneida Tribe's special role as a party to the Memorandum of Agreement among the Fox River/Green Bay Intergovernmental Partners and as a member of the Fox River/Green Bay Natural Resource Trustee Council.

The Oneida Environmental Division's comments raised two specific questions which we discussed during our meeting. Both questions concerned the general requirements for disposal of PCB-contaminated sediment that the Defendants would be required to remove from the River. This letter summarizes the clarifying points that we discussed, and it outlines several additional steps that will be taken to address the two questions posed by your comments.

The first issue raised by your office's comments concerned the following language in one of the Consent Decree appendices: "Sediment disposal includes transportation of the sediment to a dedicated NR 500 engineered landfill." [1] Your comments question whether that sentence's reference to specific state regulatory requirements set forth in Wis. Admin. Code, Chapter NR 500, was meant to imply that no other federal or state requirements would apply to any landfill receiving the sediment (such as federal requirements under the Toxic Substances Control Act or

---

[1]    That language is included in the Statement of Work attached to the 2004 Administrative Order on Consent for the Remedial Design for Operable Units 2-5 at the Site, which is reproduced as Consent Decree Appendix B, Attachment A.

other legal requirements that might apply to an out-of-state landfill facility). That implication was not intended. As noted in your comments, another appendix to the Consent Decree specifies that "Sediments classified as Toxic Substances Control Act ('TSCA') waste shall be disposed of in accordance with TSCA disposal requirements."[2] Your comments suggested that the sentence that refers only to Wis. Admin. Code, Chapter NR 500 should be revised to make clear that any landfill would need to comply with all applicable federal and state regulations. We appreciate that suggestion and that change has been made in a formal written modification that has been signed by the parties. A copy is attached to this letter. We plan to ask the Court to approve the Consent Decree with that modification to the pertinent appendix.

The second question posed by your comments points to language in a Consent Decree appendix which says that the Defendants will be required to "dispose of the dewatered sediments in upland landfills," and asks what is meant by the term "upland landfill." As discussed when we met, the term "upland landfill" is meant to refer to a traditional land-based disposal facility, as opposed to an in-water confined disposal facility ("CDF"). EPA and WDNR considered both disposal options during the remedy evaluation process, but ultimately selected "upland landfill" disposal as the preferred option. The Record of Decision used the terms "upland disposal" and "upland landfill" to distinguish a traditional landfill from a CDF, and the Consent Decree appendix merely uses the same terminology.[3] In asking the Court to approve the Consent Decree, we plan to make clear that the term "upland landfill" refers to a traditional land-based disposal facility (as opposed to a CDF).

Based on our discussion when we met in June and subsequent discussions that I have had with counsel for the Oneida Tribe, I understand that this letter and the accompanying attachment addresses the concerns raised in your comments, and I understand that the Oneida Environmental Division does not oppose entry of the Consent Decree. I would appreciate it if you would reply to confirm that understanding. Do not hesitate to call me at 202-514-1308 if you have any questions about this.

Sincerely,

RANDALL M. STONE
Senior Attorney

Attachment

---

[2] That language is in Consent Decree Appendix A, the Statement of Work for Phase I of the Remedial Action at Operable Units 2-5 of the Lower Fox River and Green Bay Site.

[3] For example, in discussing the remedial alternatives, the Record of Decision said: "Alternatives C1, C2A, C2B, C3, and F all include upland disposal options. Alternative D uses an in-water confined disposal facility for disposal." ROD at 96. Likewise, in describing the disposal option that was ultimately selected, the Record of Decision explained that "disposal of PCB-contaminated sediment from OUs 3 and 4 would be to an existing upland landfill or a newly constructed or modified landfill designed to receive the dewatered sediment." ROD at 81.

- 2 -

# Oneida Tribe of Indians of Wisconsin

PO Box 365
3759 W. Mason St.
Oneida, WI 54155

 

Phone: (920) 496-5330
Fax:     (920) 496-7883

**MAIN OFFICE**
· Administration
· Eco-Services
· Wells & Septic
· Environmental Quality
· Health & Industrial Services

**CONSERVATION FIELD OFFICE**
N8305 Olson Road
Oneida, WI 54155
Phone:  (920) 869-1450
Fax:     (920) 869-2743

August 4, 2006

Randall M. Stone
Environment and Natural Resources Division
P. O. Box 7611
U. S. Department of Justice
Washington, DC 20044-7611

> RE:  **Follow-up to Comments on Proposed Consent Decree**
> **United States and the State of Wisconsin v. NCR Corporation and Sonoco -**
> **U. S. Mills, Inc.**
> **Civil Action No. 06-CV-00484 (E.D. Wis.)**

Dear Randy:

I received your July 27, 2006 letter in response to the Oneida Environmental, Health and Safety Division's ("Oneida Environmental Division") recent comment and meeting regarding language in the proposed consent decree in the above-captioned matter. I have reviewed the non-material modification to the Statement of Work attached to the Administrative Order on Consent captioned In re Lower Fox River and Green Bay Site, U. S. EPA Region, CERCLA Docket No. V-W-'04-C-781. The modification addresses the concern raised by the Oneida Environmental Division through its comment. In addition, the explanation of "upland landfill" you provided to the Oneida Environmental Division and will provide to the Court makes the use of that term more clear.

The Oneida Environmental Division does not oppose entry of the proposed consent decree in United States and the State of Wisconsin v. NCR Corporation and Sonoco - U. S. Mills, Inc.

Sincerely,

Patrick J Pelky

Patrick Pelky, Director
Oneida Environmental, Health & Safety Division

Tab C:        Agreed Modification to Consent Decree Appendix B

**Agreed Non-Material Modification to:**

**Statement of Work Attached as Attachment A to
Administrative Order on Consent Captioned
In re Lower Fox River and Green Bay Site,
U.S. EPA Region 5, CERCLA Docket No. V-W-'04-C-781**

Background

The U.S. Environmental Protection Agency and the Wisconsin Department of Natural Resources have entered into an administrative settlement agreement with NCR Corporation and Fort James Operating Company concerning the remedial design for Operable Units 2-5 at the Lower Fox River and Green Bay Site, captioned In re Lower Fox River and Green Bay Site, U.S. EPA Region 5, CERCLA Docket No. V-W-'04-C-781 (the "Remedial Design Agreement").

The Remedial Design Agreement includes a Statement of Work for implementation of the remedial design, as set forth in Attachment A to the Remedial Design Agreement. Among other things, the Statement of Work summarizes certain aspects of the selected remedy, including the requirement for landfill disposal of dredged sediments.

The following agreed non-material modification to the Statement of Work for the Remedial Design Agreement clarifies the parties' intent regarding landfill disposal of dredged sediments.

Agreed Non-Material Modification

The parties to the Remedial Design Agreement hereby agree to modify certain language at the bottom of page 2 of the Statement of Work, as follows:

*The following language is deleted*:

**Sediment Disposal.** Sediment disposal includes the transportation of the sediment to a dedicated NR 500 engineered landfill.

*The deleted language is replaced with the following*:

**Sediment Disposal.** Sediment disposal includes the transportation of the sediment to a landfill that complies with all applicable federal and state laws and regulations.

<u>Signature Page for</u>

**Agreed Non-Material Modification to:**

**Statement of Work Attached as Attachment A to Administrative Order on Consent Captioned <u>In re Lower Fox River and Green Bay Site</u>, U.S. EPA Region 5, CERCLA Docket No. V-W-'04-C-781**

AGREED AS STATED ABOVE:

FOR FORT JAMES OPERATING COMPANY

BY: _____ DATE: 6/23/06
    Kelly Wolff
    Vice President, Green Bay Operations

FOR NCR CORPORATION

BY: _____ DATE: 6/30/06

<u>Signature Page for</u>

**Agreed Non-Material Modification to:**

**Statement of Work Attached as Attachment A to Administrative Order on Consent Captioned <u>In re Lower Fox River and Green Bay Site</u>, U.S. EPA Region 5, CERCLA Docket No. V-W-'04-C-781**

IT IS SO ORDERED AND AGREED:

U.S. ENVIRONMENTAL PROTECTION AGENCY

BY: _____          DATE: _7/14/06_
    Richard Karl, Director
    Superfund Division
    U.S. Environmental Protection Agency
    Region 5

WISCONSIN DEPARTMENT OF NATURAL RESOURCES

BY: _____          DATE: _____
    Scott Hassett, Secretary

**Signature Page for**

**Agreed Non-Material Modification to:**

**Statement of Work Attached as Attachment A to Administrative Order on Consent Captioned In re Lower Fox River and Green Bay Site, U.S. EPA Region 5, CERCLA Docket No. V-W-'04-C-781**

IT IS SO ORDERED AND AGREED:

U.S. ENVIRONMENTAL PROTECTION AGENCY

BY: _____      DATE: _____

       Richard Karl, Director
       Superfund Division
       U.S. Environmental Protection Agency
       Region 5

WISCONSIN DEPARTMENT OF NATURAL RESOURCES

BY: _____      DATE: 7|19|06

       Scott Hassett, Secretary