# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA
and the STATE OF WISCONSIN,
    Plaintiffs,

    v.                                          Case No. 06C0484

NCR CORPORATION and SONOCO-U.S.
MILLS, INC., (formerly known as U.S. Paper Mills Corp.),
    Defendants.

## DECISION AND ORDER

Plaintiffs, United States and State of Wisconsin, bring this action under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675, alleging that defendants NCR Corporation and Sonoco -U.S. Mills, Inc., are among the parties responsible for PCB contamination at Operable Units 2-5 ("OU2-5"), of five units in a larger site. This suit is part of ongoing litigation concerning contamination in the Fox River and Green Bay, See, e.g., United States v. Fort James Operating Co., 313 F. Supp. 2d 902 (E.D. Wis. 2004); United States v. P.H. Glatfeltre Co., No. 03-C-0949 (E.D. Wis. April 12, 2004). The parties have filed a proposed "Consent Decree for Performance of Phase 1 of the Remedial Action in Operable Unites 2-5 of the Lower Fox River and Green Bay Site." Before me now is plaintiffs' motion to enter the proposed consent decree. Defendants also support the motion.

## I. THE SETTLEMENT

Between the mid-1950s and 1997, paper companies released an estimated 660,000 pounds of polychlorinated biphenyls ("PCBs") into the Lower Fox River in northeastern

Wisconsin. The PCBs contaminated a site covering approximately thirty-nine miles of the river and including parts of Green Bay. In the 1990s, the United States Fish and Wildlife Service ("USFWS") began to assess the natural resource damages caused by the contamination.

Under the settlement described in the proposed consent decree, defendants will implement the cleanup remedies selected for OU2 and OU3-5 in the December 2002 and June 2003 Records of Decision, respectively, issued jointly by the U.S. Environmental Protection Agency ("EPA") and the Wisconsin Department of Natural Resources ("WDNR"). Pursuant to the settlement, defendants will remove an estimated 118,900 cubic yards of PCB-contaminated sediment from the phase one project area. Defendants will dewater the removed sediments, treat the wastewater, and dispose of the remaining sediment in an approved landfill, in accordance with the Toxic Substance Control Act if necessary. Following removal, defendants will conduct post-removal confirmatory surveys to assure that the project objectives have been achieved over at leased 95 percent of the phase one project area. The settlement requires that defendants commence work on the project no later than May 2007. The settlement does not resolve the defendant's potential liability for phase two of the remedial action or for any other response activities or costs relating the phase one area, or any other areas of the site.

In accordance with CERCLA § 122(d)(2), 42 U.S.C. § 9622(d)(2), the U.S. Department of Justice published notice of the lodging of the proposed consent decree in the Federal Register to commence a thirty day public comment period. Two comments were received, and they are attached to the plaintiff's brief in support of its motion to enter the consent decree. Neither comment opposed entry of the consent decree. One

comment from Dr. Marion Taylor described difficulties faced by her family as a result of the contamination and expressed her hope for the success of the cleanup. A second comment submitted by the Environmental, Health and Safety Division of the Oneida tribe of Indians expressed concern with the descriptions of the sediment disposal requirements. In response to the Oneida tribe's concerns, the parties agreed to a minor language modification that specified the nature of an approved landfill and clarified the meaning of the term "upland landfill."

## II. STANDARD OF REVIEW

It is well settled that in reviewing a CERCLA consent decree, a district court must satisfy itself that the settlement is reasonable, fair, and consistent with the statutory purposes of CERCLA. United States v. Davis, 261 F.3d 1, 20 (1st Cir. 2001); see also United States v. Akzo Coatings of Am., Inc., 949 F.2d 1409, 1435 (6th Cir. 1991); United States v. Cannons Eng'g Corp., 899 F.2d 79, 85 (1st Cir. 1990).

Review of a CERCLA consent decree is committed to the discretion of the district court. Cannons Eng'g, 899 F.2d at 84. However, this review involves "[c]onsiderable deference." Davis, 261 F.3d at 21 (stating that a reviewing court must defer to the administrative agency's construction of the settlement); see also Akzo Coatings, 949 F.2d at 1436 (stating that judicial deference to settlements reached by the parties to CERCLA litigation is "particularly strong" when that settlement "has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA which enjoys substantial expertise in the environmental field"); Cannons Eng'g, 899 F.2d at 84 ("That so many affected parties, themselves knowledgeable and represented by experienced

3

lawyers, have hammered out an agreement at arm's length and advocate its embodiment in a judicial decree, itself deserves weight in the ensuing balance.").

The reviewing court must also keep in mind the strong policy favoring voluntary settlement of litigation. United States v. Hooker Chem. & Plastics Corp., 776 F.2d 410, 411 (2d Cir. 1985); Metro. Housing Dev. Corp. v. Vill. of Arlington Heights, 616 F.2d 1006, 1014 (7th Cir. 1980). "While the district court should not mechanistically rubberstamp the agency's suggestions, neither should it approach the merits of the contemplated settlement de novo." Cannons Eng'g, 899 F.2d at 84. The test is not whether this court would have fashioned the same remedy nor whether it is the best possible settlement. Id.

### III. DISCUSSION

I find that the proposed consent decree is reasonable, fair and consistent with CERCLA's statutory purposes. The major policy concerns underlying CERCLA are as follows:

> First, Congress intended that the federal government be immediately given the tools necessary for a prompt and effective response to the problems of national magnitude resulting from hazardous waste disposal. Second, Congress intended that those responsible for problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created.

Cannons Eng'g, 899 F.2d at 90-91; see also Davis, 261 F.3d at 26 ("The purposes of CERCLA include expeditious remediation at waste sites, adequate compensation to the public fisc and the imposition of accountability.").

Further, there is a strong statutory preference for settlement in CERCLA cases. See B.F. Goodrich v. Betkoski, 99 F.3d 505, 527 (2d Cir. 1996), abrogation on other grounds

4

recognized by New York v. Nat'l Servs. Indus., Inc., 352 F.3d 682 (2d Cir. 2003) ("Courts considering CERCLA cases have recognized that the usual federal policy favoring settlements is even stronger in the CERCLA context."). Settlements in CERCLA cases promote one of CERLCA's primary goals -- expeditious remediation. See DuPont De Nemours and Co. v. United States, 460 F.3d 515, 540-41 (3d Cir. 2006) (stating that Congress' express purpose in amending CERCLA was to encourage settlement thereby fostering prompt and efficient cleanup); United States v. DiBiase, 45 F.3d 541, 545 (1st Cir. 1995) ("[S]ettlements reduce excessive litigation expenses and transaction costs, thereby preserving scarce resources for CERCLA's real goal: the expeditious cleanup of hazardous waste sites");

In the present case, the settlement is consistent with the goals underlying CERCLA. First, it ensures prompt performance of the selected cleanup remedy for OU2-5. The settlement requires defendants to remove a large volume of contaminated sediment, thereby reducing PCB transport to downstream portions of the river and Green Bay, reducing human exposure to PCBs from OU2-5, and reducing PCB levels in fish and birds in and around OU2-5. It also ensures that the removed sediment is disposed of in approved landfills. The settlement is consistent with CERCLA's strong statutory preference for settlement, thereby allowing scarce resources to be applied towards cleanup rather than towards litigation and transaction costs. See Davis, 261 F.3d at 26.

The settlement also appears fair and reasonable. It is the product of several months of what plaintiffs characterize as difficult negotiations between the parties in late 2005 and early 2006. Plaintiffs avow that the negotiations were conducted at arms-length by legal and technical representatives from the government agencies responsible for implementing

5

and enforcing CERCLA. Furthermore, the amount of the settlement appears to be adequate. Indeed, even if it were inadequate to cover the entire cost of the cleanup remedy, the settlement reserves to plaintiffs the right to have defendants perform or pay for any additional required work.

I also note the lack of opposition from commentators. The concerns expressed by the Oneida tribe of Indians were taken into consideration by the parties, and a non-material modification addressing their concerns was incorporated into the proposed decree.

## IV. CONCLUSION

For the reasons stated,

**IT IS ORDERED** that plaintiffs' motion to enter the proposed consent decree is **GRANTED** and the consent decree is hereby **APPROVED** and **ENTERED** with the agreed modification to consent decree appendix B that was attached at Tab C to the United States' brief in support of the motion.

Dated at Milwaukee, Wisconsin, this 3 of November, 2006.

/s_____
LYNN ADELMAN
District Judge